STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. CHARLES OLIVER, PLAINTIFF IN ERROR.

Argued May 28, 1930—Decided February 2, 1931.

For the plaintiff in error, *Augustus S. Dreier* (*Winfield S. Angleman*, of counsel).

For the defendant in error, *Abe J. David*.

The opinion of the court was delivered by

BODINE, J. The plaintiff in error was indicted by the Union county grand jury charged with the unlawful and felonious killing of Edwin Fitzpatrick. He was convicted of manslaughter and sentenced to the New Jersey state prison. A certificate of reasonable doubt being granted, he was admitted to bail pending a review of the conviction. On writ of error to the Supreme Court, the conviction was affirmed and thereafter the judgment by appropriate means was removed here.

The case was before the Supreme Court on strict writ of error and bill of exceptions, and also under the one hundred and thirty-sixth section of the Criminal Procedure act. The assignments of error are eleven in number, and properly present the fundamental error complained of.

On the evening of October 17th, 1928, Fitzpatrick, a young

motorcycle policeman, was killed on the state highway leading to Rahway, by reason of a violent contact with an automobile operated by Oliver, the plaintiff in error. The state adduced at the trial conflicting medical testimony as to the intoxication of Oliver at the time of the occurrence. One physician pronounced him intoxicated because his breath smelled of liquor, and further because he seemed excited and his gait was unsteady. He, however, made no physical examination of the accused. Another physician, making an examination an hour later, pronounced negative the tests he applied for intoxication.

The testimony indicated that Oliver, who had a crippled arm, was driving a Studebaker sedan on the right-hand side of the highway. The state's first witness to the fact, a man driving close behind the plaintiff in error, testified: "*Q.* And the car that was immediately ahead of you—Mf. Oliver's car, was in the place where it should have been on the side of the center of the road? * * * *A.* I should say yes, to that. *Q.* And Oliver did not zigzag as he went up the street, did he? *A.* He did not. *Q.* What did you see when you looked at the front of the Oliver car? *A.* I saw a motorcycle underneath it, and the radiator all smashed in. *Q.* Where was the motorcycle with reference to the front of the automobile? In other words, had the Oliver automobile passed over it? *A.* No, it had not."

No testimony adduced indicated either an unusual method of operation of the car or the driving of the same beyond the right side of the road. Marks upon the road showed that the brakes had been applied with sufficient force to mark the roadway. Several witnesses testified that shortly after the occurrence Oliver walked to a garage to call aid and appeared intoxicated. One witness smelled liquor in the car. There was on the whole case perhaps sufficient evidence for the jury.

A witness called in behalf of the defendant was driving in the opposite direction from Oliver at about the time of the casualty. He testified: "I was traveling in the direction of Rahway at about twenty miles an hour, and all of a sudden I heard a motorcycle; I heard the roar of a motorcycle

passing me so close that I pulled my wheel tight and turned to one side for fear he would hit me. He must have been going about——." The witness was about to go further into the manner of the operation of the motorcycle, on which deceased was riding, when interrupted by the court, who felt that under the rule laid down in the case of *State* v. *Elliott,* 94 *N. J. L.* 76, any evidence bearing upon the conduct of the deceased was inadmissible and so ruled.

The only question which we think worthy of discussion challenges the propriety of the court's ruling, in so far as it related to the admission of the relevant testimony, perhaps inartistically offered, bearing upon the acts of the deceased at or shortly before his death. On that point we are not in accord with the views reached, but not expressed, by the Supreme Court in affirming the judgment.

The learned trial judge properly charged the jury as follows: "If you find from the evidence that the deceased came to his death as the result of driving his motorcycle at a high and excessive rate of speed directly at and into the automobile of the defendant, the law would not permit you to convict the defendant in this case, and you must acquit him." But he also charged the jury: *"So far as I can understand this evidence, you have no explanation as to how the officer was driving his motorcycle, and I will point out to you that, no matter how the officer was driving the motorcycle, contributory negligence is no answer that the defendant can urge in a criminal case of this kind."* This was error, because it precluded the presentation of evidence which might show that the proximate cause of the death was the fault of the deceased.

The Supreme Court, in *State* v. *Elliott, supra,* said: "The main insistence, however, was the direction of the court that the contributory negligence of the deceased, if it existed, would not present a defense to the defendant's act of malfeasance, and such testimony was excluded. * * * The fundamental and specific inquiry is not whether some other person was negligent but whether the defendant was violating the specific injunction of the law at the time of the homicide." In

that case the defendant was driving down a main thoroughfare of Newark at forty miles an hour without regard to the right of users of the highway. He struck and killed a pedestrian. Obviously, the case is distinguishable on principle from the one before us.

In the case of *Estell* v. *State,* 51 *N. J. L.* 182, Chief Justice Beasley held that declarations by the deceased in the nature of a narrative of past events was inadmissible and concluded his opinion by saying: "In this case the jury should have been told that the defendant was guilty as charged, if he did the unlawful act in question under conditions that were dangerous to the toll-gate keeper; as, if he drove through the gate at a rapid pace, or urged his team of mules on after they had been seized by the deceased, or if from their known fractiousness it was hazardous to stop them—the criminality consisting of the two elements, of the unlawfulness of the act, of the unlawfulness and danger in the mode of its execution." In that case, defendant's wrongful act was said to have provoked action by the gatekeeper, which the defendant sought to show was negligent. He could, of course, do no such thing.

In the present case, the trial judge squarely presented the issue of the defendant's conduct to the jury, but he excluded the evidence which had a tendency to show that there was a collision in which the plaintiff in error was in no sense the proximate cause of the death that ensued.

"Where a person has, by his driving of an automobile in a willful, careless, reckless and negligent manner, or at an unlawful rate of speed, as defined by statute, caused the death of another, the negligence of such decedent is held, under ordinary circumstances, not to relieve the driver from criminal liability for his act." *Huddy on Automobiles* (*8th ed.*), § 925.

"Thus, if one running his motor vehicle at a speed prohibited by statute kills a child in the street, it is no defense to a prosecution for homicide that the child suddenly, and perhaps negligently, ran in front of the machine." *Ibid.*

"Similarly one who drives his car at a reckless rate of

speed, in violation of law, and collides with another vehicle and his course is directed so that he kills a pedestrian, cannot escape punishment because the driver of the other car also was negligent." *Ibid.*

"The conduct of the deceased, however, is material in a prosecution of this nature to the extent that it bears upon the negligence or wrongful conduct of the accused, or on the issue whether the conduct of the accused was the proximate cause of the death of the deceased. If the act of the accused was not the proximate cause of the death of the deceased, he cannot be convicted of manslaughter." *Ibid.*

"There is no reason why a party who negligently puts himself in the way of danger should not be obliged to bear the consequences of his negligence, subject to the same qualifications as are applied in civil suits for damage produced by negligence. Of course his negligence, in exposing himself to danger, will be no defense to an indictment against persons who recklessly injure him when in that condition." *Whart. Cr. L.,* § 188.

"It has been said that contributory negligence is no defense to a criminal prosecution. This, however, is not correct, since a person who negligently rushes into danger, such action not being incident to a lawful business, cannot afterward prosecute, either criminally or civilly, the person producing the danger." *Whart.,* § 205.

The same learned author suggests by hypothesis: Suppose "a carriage is driven recklessly along a road and kills a drunken man, who, if he were sober, could have got out of the way. The deceased's drunkenness is in this case no defense, because the defendant had no right to drive recklessly along the road. But, if though there may have been some negligence on the defendant's part [*e. g.,* in the equipment of his carriage] the injury was primarily due to the deceased having flung himself recklessly in the defendant's path, such contributory negligence is a defense."

Chief Justice Pennewill said, in *State* v. *Disalvo* (*Delaware Court of Oyer*), 121 *Atl. Rep.* 661, 662: "The conduct of the deceased, however, is material in a prosecution of this

nature, to the extent that it bears upon the negligence or wrongful conduct of the accused."

Chief Justice Rugg said, in *Commonwealth* v. *Guillemette,* 243 *Mass.* 346 (a homicide case growing out of an automobile accident) : "The actual conduct of both parties at the time might be shown."

The same court, in *Commonwealth* v. *Peach,* 239 *Mass.* 575, approved the following charge : "I thought I made this plain to you, that it was your duty to take into account all the circumstances preceding and attending the collision, including among others the conduct of the driver of the Peck automobile (in which deceased was riding). And I thought in that connection I instructed you that if the defendant's conduct was reckless, independently of the conduct of Peck, the defendant would be guilty if death was caused by his recklessness. I so instruct you now. In such a case the defendant could not avail himself of the argument that Peck was negligent, because his guilt was already established by his own conduct, quite independently of anything that Peck might have done. However, in determining whether or not the defendant was reckless, it is proper to take into account the entire situation with which he was called upon to deal as he entered the curve as well as at the moment of the collision, including the conduct of Peck, the driver of the machine. If, taking that into account, you should find that Peck was negligent, but should still find that quite regardless of any negligence of Peck this defendant was reckless it would be your duty to find him guilty of recklessness. If, on the other hand, his conduct would not have been reckless, would not have resulted as reckless conduct would have resulted but for the recklessness or negligence of Peck, of course he would be innocent of recklessness. But understand, understand it clearly, he cannot excuse his recklessness, if you find him reckless, by showing the negligence of Peck." The court said : "Taking the charge as a whole, in clear and unmistakable terms, it directed the jury to consider the entire situation, and specifically called their attention to the conduct of the husband (the driver of the Peck automobile) as affecting

that of the defendant. The jury were instructed to consider that conduct in determining whether the defendant's acts or omissions to act had been such as to warrant his conviction. This was sufficient."

"The driving of an automobile by a person intoxicated is an unlawful act, and if the death of a person is attributable to the unlawful act, that in law constitutes manslaughter." *State* v. *Blaine*, 104 *N. J. L.* 325. But, on the other hand, if Oliver was intoxicated while driving his automobile, still if the deceased's death was primarily due not to Oliver's act but to the deceased having driven his motorcycle into Oliver's machine, Oliver was not guilty of manslaughter.

Evidence as to the speed of the motorcycle shortly before the occurrence, the manner in which it was being driven and the side of the road upon which it was being operated, to say the least, was material to the issues raised in the case and had a direct bearing upon the culpability of the plaintiff in error. Obviously, if while plaintiff in error was in the exercise of due care, a fatality occurred by reason of the negligent act of the deceased there should have been an acquittal.

The judgment under review must be reversed.

*For affirmance*—None.

*For reversal*—TRENCHARD, PARKER, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, KAYS, DEAR, WELLS, JJ. 11.