STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. EUGENE LAWRENCE KELLOW, PLAINTIFF IN ERROR.

Submitted May 6, 1947—Decided July 7, 1947.

Before CASE, CHIEF JUSTICE, and Justices PARKER and BURLING.

For the State, *Duane E. Minard, Jr.,* Prosecutor; *Richard J. Congleton,* Assistant Prosecutor.

For the plaintiff in error, *Edward M. McGlynn.*

The opinion of the court was delivered by

CASE, CHIEF JUSTICE. Eugene Lawrence Kellow was tried and convicted in the Essex County Court of Quarter Sessions upon an indictment charging that on February 15th, 1946, in the Town of Belleville, he caused the death of Mrs. Anna

Glennon by driving a motor vehicle carelessly and heedlessly in wanton disregard of the rights and safety of others in violation of Revised Statutes 2:138-9—the crime commonly known as "death by reckless driving." The matter comes before us on assignments of error and also on specification of causes for reversal under a certification of the entire record.

The first point argued by the plaintiff in error is that the verdict was against the weight of the evidence. There was testimony from which it could be found: Four persons, of whom the decedent Glennon was one, alighted from a north bound bus on Franklin Avenue, a county highway in the Town of Belleville, at a point almost facing the broad entrance drive to the Essex County Isolation Hospital where Mrs. Glennon and another were employed and a third of the group was a prospective visitor. The spot was not posted as a bus stop but buses frequently stopped there, and the bus in question stopped on an ordinary buzz signal. The date was February 15th, 1946, the hour was about 7:20 in the evening, and the weather was clear. The group waited for the bus to proceed and for the traffic to open and then undertook to cross the remainder of the highway to the westerly side. When they began that crossing a view to the south disclosed a clear highway. A car was observed coming from the north at a considerable distance and at an average rate of speed. When the group was at about the center of the road defendant's car came from the south at a very fast rate of speed, smashed into the group and hit two of them with such force that one, the decedent Glennon, was thrown ten feet into the air and many feet ahead of the point of impact and killed almost instantly, and another, Richard J. Applegate, was thrown a considerable distance and severely injured. The car left skid marks on the road surface for a distance of 136 feet. It careened and finally stopped at right angles to the curb. The defendant admitted to the police that his car was going at about 40 miles an hour. A witness estimated that it was going at 50 miles an hour.

To justify the setting aside of a verdict in criminal cases on the ground that it is against the weight of the evidence, the verdict must so clearly appear to be against the weight

of the evidence as to give rise to the inference that it was the result of mistake, passion, prejudice or partiality on the part of the jury. *State* v. *Tomaini,* 118 *N. J. L.* 162. The point is not sustained.

It is also argued that the court made several errors in its charge to the jury. The first contention under this branch of the argument is that the court erred in failing to charge on the question of proximate cause and in charging with respect to the effect of contributory negligence by the deceased. The court charged that the defendant was accused of causing the death of Anna Glennon by driving a motor vehicle carelessly and heedlessly in wanton disregard of the rights and safety of others; that the defendant was presumed to be innocent until proven guilty beyond a reasonable doubt; that the burden of proving guilt beyond reasonable doubt was upon the state throughout the entire case and never shifted; that the defendant was under a duty to exercise such care and skill and to have his car in such reasonable control as a reasonable and ordinarily prudent person would under the circumstances; that he was under a duty to observe the provisions of the Motor Vehicle Act as to rates of speed and otherwise, but that the mere neglect to use such care or observe such provisions was not necessarily sufficient to form the basis of a conviction and was merely a circumstance to be considered along with all the facts and circumstances of the case; that the defendant's neglect must be more than mere carelessness and neglect, that it must go to such an extent as to constitute a reckless indifference to, and disregard of, human life. Thus it was put fully to the jury that the defendant was not to be found guilty unless it was proved beyond a reasonable doubt that he had by his careless and heedless driving of his motor vehicle in wanton disregard of the rights and safety of others caused the death. We discover nothing therein that may be called error harmful to the defendant. Whatever pertinency a properly framed request to charge on proximate cause might have had, the omission to charge, no request having been made, was not error.

The fundamental and specific question was whether the defendant caused the death in violation of the statute. We

think that the following excerpts truly reflect the tenor of the charge on the subject of contributory negligence: "The jury should not be confused by the rule of contributory negligence. * * * It is not controlling whether the deceased was careless or was in any way negligent in her mode of conducting herself. * * * If the elements of the crime here charged are duly proven against the defendant, as I have defined those elements to you, the defendant is not excused because the deceased was guilty of contributory negligence. * * * In criminal cases, * * * the rule of contributory negligence has no application; it is no excuse; and it does not avail the defendant that the deceased was guilty of contributory negligence, although, as I have indicated to you, all of the evidence must. be taken into consideration in- determining whether the defendant has been proved guilty be-yond a reasonable doubt."

The rule, as we deduce it from *State* v. *Elliott,* 94 *N. J. L.* 76; *State* v. *Oliver,* 107 *Id.* 319, and the authorities relied upon in those decisions, is as follows: Contributory negligence by the decedent is not a defense as in civil damage suits; but evidence of negligence on the part of the decedent is admissible and is entitled to be considered on the question of whether the death was due to criminal negligence on the part of the defendant or to some other cause. If the defendant is shown beyond a reasonable doubt to have been guilty of the acts proscribed by the statute, resulting in the death, it matters not that the decedent would have escaped the fatal consequences had he, himself, not been negligent. The accused may not avoid the consequences of his own wrong by showing the negligence of the decedent. We consider that the charge did not transgress either the letter or the spirit of the rule and that the jury were left under no misapprehension about the legal purport of the instruction.

The court further charged that one of the important issues in the case was the question of the speed at which the defendant was driving and that the jury could take into consideration all the facts produced before them, including the skid marks left by the car on the macadam road for a distance of 136 feet. The reference to the skid marks is set up as

error. It was within the province of the jury to find some significance, on the question of the speed at which the car was traveling, in the distance which it took the driver to bring the car to a stop and in the final position of the car crosswise of the road and to consider the skid marks in connection therewith. It is common knowledge that the setting of automobile brakes does frequently leave plainly distinguishable marks known as skid marks, made by the friction between the rubber tires on the locked wheels and the hard surface of the road. The jury had the right to determine what, if any, weight should be accorded such proof.

The defendant, in describing his course of conduct, had intimated that he was blinded by the headlights of the cars driving in the opposite direction, and the court charged:

"If you find that to be the substance of his testimony; that is, that he was blinded by the headlights of the cars coming in the opposite direction, then this rule of law applies: If his vision was admittedly destroyed, it was his duty to stop his car and endeavor to adjust his means of vision so that his vision might be restored and, if, instead of doing this, he took the chance of finding the way clear and for that reason ran into the deceased, he cannot be excused by the mere fact that the oncoming headlights blinded him. So if you find as a matter of fact the defendant was blinded by the oncoming headlights at or near the scene of the accident and that he, nevertheless, failed to stop or slow down and endeavor to adjust his means of vision so that it was restored, then those would be facts to be considered by you, together with all of the evidence in the case, in deciding whether this defendant is guilty of the crime with which he is charged." That charge conformed to the principle of law enunciated in *Osbun* v. *De Young*, 99 *N. J. L.* 204. "No man is entitled to operate an automobile through a public street blindfolded," *Hammond* v. *Morrison*, 90 *Id.* 15. It will be observed that the charge is based, not upon a mere impairment of vision, but upon the hypothesis that the defendant was made blind or his vision was destroyed and that the charge assumes such a duration of the condition as would permit a stopping or slowing down.

The final error alleged to exist in the charge is in the instruction regarding the lawful speed under the state statutes. It is said that the court should not have charged that the *prima facie* lawful speed was not in excess of thirty-five miles an hour although that was the statutory provision in force at the time of the accident, February 15th, 1946, under *R. S.* 39:4–98 as amended by ch. 325, Pamphlet Laws 1942, but should have stated that speed as not in excess of forty miles an hour because of the repealer passed February 19th, 1946, ch. 8 of the Pamphlet Laws of that year. The contention is that under *Westinghouse Electric Corporation* v. *United Electrical, &c., Local No.* 410, 139 *N. J. Eq.* 97, the controlling statute was that which was in effect at the time of the trial rather than that at the time of the occurrence. Counsel misconceived the effect of the cited decision; the charge was correct as delivered.

Finally, complaint is expressed regarding certain evidence rulings which we think do not constitute reversible error and need not be recited.

The judgment below will be affirmed.