PEOPLE v JEGLUM

1.   HOMICIDE—AUTOMOBILES—NEGLIGENT    HOMICIDE—PROXIMATE
     CAUSE.
     Refusal to give instructions to the jury requested by the defend-
     ant in a negligent homicide case that the defendant's act must
     be *the* proximate cause and not *a* proximate cause of the
     victim's death was error, and when coupled with an instruction
     given that the conduct of the victim should not be considered in
     determining whether defendant's negligence was the proximate
     cause of death, requires reversal of defendant's conviction
     (MCLA 750.324).

2.   HOMICIDE—AUTOMOBILES—NEGLIGENT  HOMICIDE—NEGLIGENCE  OF
     VICTIM.
     The contributory negligence of the victim is not a defense in a
     prosecution for negligent homicide, but the victim's conduct
     should not be eliminated from consideration because it has a
     bearing on the claimed culpable negligence of the defendant
     (MCLA 750.324).

3.   HOMICIDE—AUTOMOBILES—NEGLIGENT  HOMICIDE—NEGLIGENCE  OF
     VICTIM.
     Instruction to the jury in a negligent homicide case that "contrib-
     utory negligence is no defense" is, by itself, erroneous because
     it suggests that any contributory negligence on the part of the
     victim is removed from the jury's purview, and further instruc-
     tion that the jury is free to consider all of the circumstances
     does not purge that error (MCLA 750.324).

4.   HOMICIDE—AUTOMOBILES—NEGLIGENT    HOMICIDE—PROXIMATE
     CAUSE—NEGLIGENCE OF VICTIM.
     A negligent homicide conviction may not stand where the ques-
     tion of causation of the collision had become one of considera-
     ble doubt because the only eyewitness testified that defendant
     looked for oncoming traffic before commencing her turn and
     that no one knew where the victim was relative to defendant at

REFERENCE FOR POINTS IN HEADNOTES
[1–4] 40 Am Jur 2d, Homicide § 476.

the time defendant commenced turning, and where the trial
court instructed the jury not to consider the victim's conduct.

Appeal from Eaton, Willard L. Mikesell, J. Submitted Division 3 May 10, 1972, at Lansing.
(Docket No. 11845.) Decided May 30, 1972.

Nancy L. Jeglum was convicted of negligent
homicide. Defendant appeals. Reversed and remanded for a new trial.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Donald E. Zimmer,*
Prosecuting Attorney, and *William B. Davis, Jr.,*
Assistant Prosecuting Attorney, for the people.

*Newman & Mackay,* for defendant on appeal.

Before: J. H. GILLIS, P. J., and T. M. BURNS and
TARGONSKI,* JJ.

J. H. GILLIS, P. J. Defendant appeals as of right
from a conviction by jury of negligent homicide,
MCLA 750.324; MSA 28.556.

At 7:10 p.m. on May 21, 1970, defendant Nancy
Jeglum was driving northeast on highway M-99.
Intending to make a left turn into the driveway of
Forest Lawn Cemetery, defendant stopped her car
to allow a car going in the opposite direction to
pass. Seeing no additional oncoming traffic, defendant proceeded to make her turn into the cemetery,
traveling at a speed of two to five miles per hour.

At some point in completing her turn, defendant's car was struck at the centerpost by the
oncoming motorcycle driven by the deceased, Stanley Mead.

The sole eyewitness to the accident was a friend

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

of Mr. Mead's, who was following him on his own motorcycle at a distance of 55 to 70 yards, at a speed of 50 to 55 miles per hour. The witness testified that because of a 400-foot-long dip in the highway, one quarter mile north of the scene of the accident, he lost sight of the deceased until just before the impact.

Testimony conflicted as to whether the point of impact was in the deceased's southbound lane of the highway or in the cemetery driveway. Testimony was undisputed that the day was clear, the pavement dry, and that although it was evening, there was sufficient light to see without headlights.

Donna Mead, wife of the deceased, testified that her husband had an artificial left eye on the day of the accident, but that the sight in his right eye was perfect.

Defendant testified that she had an unobstructed view of the highway ahead, had looked, but did not see the deceased before completing her turn.

It was stipulated that deceased died as a result of the accident.

On appeal, the defendant raises many issues, only one of which we will consider, as it is dispositive of this case. Did the trial judge commit reversible error in (1) refusing defendant's requested instruction that to find the defendant guilty, it must be established that her negligence constituted "the" proximate cause of Stanley Mead's death, and in (2) instructing the jury that the negligence of the deceased, if any, was to have no part in their decision.

In *People v Scott,* 29 Mich App 549 (1971), involving a charge of involuntary manslaughter, we held at p 557 that:

"It must first appear that the defendant's act was

grossly negligent and that the resulting homicide was *'the* natural or necessary result of *the act* of the defendant'."

We expressed concern in that case about imposing criminal liability in a situation where both defendant and deceased had acted negligently, noting that criminal guilt under our law is based on personal fault.

"In criminal prosecutions there must be a more direct causal connection between the criminal conduct of the defendant and the homicide charged than is required by the tort liability concept of proximate cause." *Scott, supra,* at p 558.

The trial judge's refusal to give the requested instruction: that the defendant's act must be *the* proximate cause, and not *a* proximate cause, of the victim's death, in order to support a conviction for negligent homicide, was error.

The effect of that error, when coupled with the instructions given the jury that the conduct of the deceased should not be considered, was so prejudicial as to require reversal.

In this case, unlike the *Scott* case which involved the possible negligence of third parties, the only parties whose conduct could have been the proximate cause of the accident were defendant and deceased. The jury's finding as to the existence of negligent behavior on the part of the deceased thus became crucial, in determining whether defendant was the sole cause of the accident.

The trial judge properly instructed the jury that deceased's contributory negligence, if any, was not a factor in a criminal case, and would not negate defendant's negligence if the latter were established. The jury was also instructed that it should

consider every circumstance surrounding the accident in making its decision as to defendant's guilt.

The jurors interrupted their deliberations to ask of the court: "Does negligence on the part of Mr. Mead have any bearing on our decision?"

The trial judge repeated the earlier instructions on that point, then added:

"To further enumerate on this, the issue is not whether or not the deceased was negligent. It is no part of your decision or no concern."

This instruction effectively eliminated the conduct of the deceased from the jurors' consideration. While contributory negligence of the deceased was no defense, it did not follow that his conduct should be eliminated from the case.

" * * * [I]t should be considered as bearing upon the claimed culpable negligence of the respondent * * * . [W]ere the deceased, at the time of the accident, using ordinary care for their own safety? If they were not, that fact would not be a defense, but it would be an important factor in the case which the defendant would be entitled to have the jury consider." *People v Campbell,* 237 Mich 424, 431 (1927). See *People v Clark,* 295 Mich 704, 708–709 (1940).

The trial judge's charge in answer to the jury's question was not responsive; it failed to state the possible relevance of the deceased's conduct in the light of the *Scott, Campbell,* and *Clark* cases, *supra,* and was, moreover, misleading in that regard.

The statement "contributory negligence is no defense" is, by itself, misleading. It suggests that any and all contributory negligence on the part of the victim is removed from the jury's purview. Instruction that the jury is free to consider all of

the circumstances does little to allay that impression.

The case against Nancy Jeglum was constructed entirely of circumstantial evidence. The only eyewitness presented by the prosecution was the deceased's motorcycling companion, Richard Frieling, whose view of the accident was limited to the moment of impact. At trial, he testified that he had not seen the Jeglum vehicle approaching from the northbound lane prior to her turn; that he did not see the Jeglum vehicle commence its turn; that he lost sight of the deceased's motorcycle when he himself entered the dip in the road. He could not testify to the distances between the motorcycles before the accident, nor could he say how far the deceased was from defendant's car when she started her turn. The accident happened a second or a second and a half after he caught sight of the deceased again.

No testimony was given characterizing defendant's conduct as careless, reckless, or negligent. There was only defendant's own testimony that she looked, saw no traffic coming, and commenced her turn. There is no evidence as to how close the deceased was to the intersection when defendant began her turn; whether he was so close that such a turn should have appeared unsafe or whether there was sufficient distance between them to permit defendant to turn. The jury was presented only the result: that a collision occurred.

While there is no explanation as to why defendant did not see the deceased, there is nothing to show that had she seen him she would have been precluded from continuing her turn. His own speed and proximity were factors affecting defendant's criminal liability, as were his reactions to the situation. Yet the conduct of the deceased was

removed from the jury's consideration. The result is tantamount to declaring that left-hand turns from which a fatal accident follows are criminal acts without a further showing.

Such is not the law in Michigan. MCLA 257.650; MSA 9.2350, defines the duties of those making left turns and of oncoming drivers as follows:

"The driver of a vehicle within an intersection intending to turn to the left shall yield the right-of-way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard, but said driver, having so yielded and having given a signal when and as required by this chapter, may make such left turn *and the drivers of all other vehicles approaching the intersection from said opposite direction shall yield the right-of-way to the vehicle making the left turn.*" (Emphasis supplied.)

Issues of causation in which there are two or more independent operating agents contributing to the final result present difficult problems for resolution. This is especially true where one cause or agent is an intervening cause or where the contribution of one cause is said to preponderate.

The Court has said that conviction under this statute requires a finding of negligence greater than slight yet less than gross *(People v Campbell, supra; People v McMurchy,* 249 Mich 147, 151 [1930]), and has left the problem of making the practical distinctions to the jury.

The question of causation itself is close; the problem of *dual* causation makes it narrower. Where criminal guilt or innocence is made to rest on feather-edged shadings of negligence, serious questions of reasonable doubt come into play.

The defendant was entitled to have the jury consider the conduct of the deceased, as bearing

upon the question of her alleged negligence. The court's charge effectively precluded that consideration. Therefore, we reverse and remand for a new trial.

All concurred.