**Re Nae WREN, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 3156.**

Supreme Court of Alaska.

April 14, 1978.

---

Robert Merle Cowan, Asst. Public Defender, Kenai, and Brian Shortell, Public Defender, Anchorage, for appellant.

Thomas M. Wardell, Dist. Atty., Kenai, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, Chief Justice, RABINOWITZ, CONNOR, BURKE and MATTHEWS, Justices.

## OPINION

BOOCHEVER, Chief Justice.

■ Re Nae Wren was found guilty by a jury of the crime of negligent homicide in violation of AS 11.15.080.[1] She appeals, contending that the trial court erred: (1) by

---

1. AS 11.15.080 provides:

 *Negligent homicide.* Every killing of a human being by the culpable negligence of another, when the killing is not murder in the first or second degree, or is not justifiable or

refusing to instruct the jury that the negligence of the deceased could be considered in determining whether Wren was culpably negligent; and (2) by denying Wren's proposed jury instructions regarding proximate cause.[2] We affirm.

### FACTS

During the foggy early morning hours of August 23, 1975, two cars collided in the vicinity of Clam Gulch, on the Kenai Peninsula. Re Nae Wren was the driver of the vehicle in which Thomas Farry was killed. Wren testified that on the preceding evening, she had stopped at the Clam Shell Lodge to purchase some cigarettes. Farry, a trainee bartender at the Clam Shell Lodge, bought her a drink, and she stayed to talk and drink with him. Around 1:00 a.m., Wren left the lodge and got into her borrowed car. Farry, who had followed her outside, spoke to her for several minutes through the opened driver's door and then entered the car on the passenger side. After a short conversation with other people at the front of the lodge, Wren drove away. Farry was observed to be sitting in the passenger bucket seat. A witness at the lodge observed the rear of the car as it left and noticed that the taillights were not lit. Wren turned north onto the Sterling Highway and, within about 100 feet from the lodge, collided with an oncoming car.

The driver of the oncoming car testified that Wren's car was in the south-bound lane and that the headlights were not lit.[3] That driver could not be certain that the parking lights also were not lit as she could see some reflection on Wren's car.[4] The speed of the oncoming vehicle was variously estimated at 40–45 miles per hour.

Wren testified to a loss of memory from the shock and said that she remembered nothing from the time of leaving the Clam Shell Lodge until a time in the hospital, several hours after the accident.

She said that she had had two beers before she left home and also drank at the Clam Shell Lodge. According to a test taken at the hospital, her blood alcohol level was .19 percent. Farry's autopsy revealed his blood alcohol to be about .17 percent.[5] AS 28.35.033(a)(3) creates a presumption of being under the influence of intoxicating liquor if there is .10 or more percent of alcohol in the blood.

There was testimony and photographic evidence that Farry struck his head in the middle of the windshield, and one of the investigating officers admitted that it was possible that Farry may well have been in the middle of the vehicle instead of in his bucket seat. The officer's belief, however, was that he had been seated in the passenger seat until the impact of the collision.

### THE VICTIM'S CONDUCT

Based on the testimony summarized above, counsel claims that there was cir-

excusable, is manslaughter, and is punishable accordingly.
AS 11.15.040 provides that manslaughter ". . . is punishable by imprisonment in the penitentiary for not less than one year not more than 20 years."
Wren received a sentence of three years with two and a half years suspended, subject to probation for five years.

2. Wren also raises a question of possible prejudice in the answer to the jury's request for additional instruction on the meaning of the term "feloniously" as used in an instruction recapitulating the indictment. The court responded that the term meant only that the state had charged the defendant with a felony. This issue was not listed in the points on appeal as required by Appellate Rule 9(e). *Miller v. City of Fairbanks*, 509 P.2d 826, 829 (Alaska 1973), nor was the issue adequately briefed.

Appellate Rule 11(b)(1)[g]. For these reasons, we do not address it.

3. A state trooper testified that there was a broken yellow center line and white shoulder lines at the portion of the highway where the accident occurred.

4. The owner of the car Wren was driving testified that he had had problems with the headlights and had recently replaced the fuses. An officer testified that he could not determine whether the lights were operative at the time of the crash.

5. The physician performing the autopsy testified that, although the autopsy was not conducted until almost 24 hours after the death, the test was accurate because blood alcohol level remains constant after death.

cumstantial evidence that the deceased may have been making sexual advances or interfering in some other way with Wren's driving.

> Counsel requested an instruction stating: You may consider the evidence of the negligence of the deceased in determining whether the defendant was culpably negligent. You may also consider the negligence of the deceased in determining whether the defendant's conduct was the proximate cause of death.

The court rejected this instruction. Counsel contends that the trial court erred in failing to instruct the jury that it could consider any negligence of the deceased in determining whether Wren was culpably negligent.[6]

■■■ We believe that, when evidence is presented from which a jury may properly infer that the decedent's conduct had a bearing on the alleged culpable negligence of the driver, a requested instruction that the deceased's conduct may be considered by the jury should be given. Authorities cited by both the state and Wren are in substantial agreement that a decedent's conduct may be considered, insofar as it has a bearing, on the defendant's alleged negligence. Negligence of the deceased may also be considered with reference to the issue of whether the defendant's culpable negligence was the proximate cause of death. Otherwise, any negligence of the deceased is irrelevant.

In *People v. Jeglum*, 41 Mich.App. 247, 199 N.W.2d 854, 858 (1972), the court stated that "the defendant was entitled to have the jury consider the conduct of the deceased, as bearing upon the question of her alleged negligence." In *State v. Diamond*, 16 N.J.Super. 26, 83 A.2d 799, 803 (1951), the court stated:

> "The conduct of the deceased, however, is material in a prosecution of this nature to the extent that it bears upon the negligence or wrongful conduct of the accused, or on the issue whether the conduct of the accused was the proximate cause of the death of the deceased. If the act of the accused was not the proximate cause of the death of the deceased, he cannot be convicted of manslaughter."[7]

The court, however, explained:

> "If the defendant is shown beyond a reasonable doubt to have been guilty of the acts proscribed by the statute, resulting in the death, it matters not that the decedent would have escaped the fatal consequences had he, himself, not been negligent. The accused may not avoid the consequences of his own wrong by showing the negligence of the decedent."[8]

Similarly, in *State v. Schaub*, 231 Minn. 512, 44 N.W.2d 61, 66 (1950), the court held:

> Contributory negligence of the victim is not a defense in a criminal prosecution. . . . Contributory negligence of the

**6.** We have previously stated that:
> [I]n order to establish culpable negligence for the purposes of our manslaughter provision, a degree of conduct more reckless and wanton than would be involved in ordinary negligence is required.

*DeSacia v. State*, 469 P.2d 369, 372 (Alaska 1970). In *Stork v. State*, 559 P.2d 99, 101 (Alaska 1977), we reversed a manslaughter conviction for failure of the court to instruct on the higher standard of culpability, stating that:
> [U]nder our manslaughter provision [AS 11.-15.080], proof of ordinary negligence, not amounting to a reckless and wanton disregard of the consequences to others, is not sufficient to support a conviction for manslaughter.

The court properly instructed as to the degree of negligence required for a conviction of Wren. The jury was told:

> "Culpable negligence", as used in the law which applies in this case, is negligence of such a degree, so gross and wanton, as to be deserving of punishment. Culpable negligence is something more than the negligence necessary to support a civil action for damages. Culpable negligence implies a reckless disregard of consequences, a heedless indifference to the rights and safety and even the lives of others.

**7.** *Quoting, State v. Oliver*, 107 N.J.L. 319, 153 A. 399, 400 (1930), *quoting*, Huddy on Automobiles § 925 (8th ed. 1927).

**8.** 83 A.2d at 803, *quoting, State v. Kellow*, 136 N.J.L. 1, 53 A.2d 796, 798 (1947), *aff'd*, 136 N.J.L. 633, 57 A.2d 389 (1948).

victim may be considered only insofar as it tends to show that the defendant was not negligent or that his acts did not constitute the proximate cause. (citations omitted) [9]

 Applying these considerations to the case before us, we note that Wren was charged with three negligent acts in that she operated her vehicle: (1) while under the influence of alcohol; (2) after dark, without headlights and (3) on the wrong side of the road.

The conduct of the deceased could not have had a bearing on any negligence as to the first two acts. There is no evidence from which it could be inferred that her intoxication was not voluntarily incurred. She was observed driving when the car left the lodge, without taillights lit, and the driver of the other vehicle in the crash testified that the headlights were either off or set for parking. The deceased's conduct had no bearing on that alleged act of negligence.

Only with respect to the allegation that she was driving on the wrong side of the road is there any possibility of the decedent's conduct affecting her negligence. Obviously, if a passenger were to seize the steering wheel or turn it so as to cause a vehicle to be on the wrong side of the road, it would have a bearing on allegations of a driver's culpable negligence. Even lesser distracting conduct such as sudden amorous activity might also bear on a driver's conduct, considering the high standard of culpable negligence required to be determined by the jury. There is no direct evidence of any such conduct on the part of Farry. He was observed in the passenger seat at the time that the vehicle left the lodge. The only evidence from which the inference could arise is that Farry struck his head in the middle of the windshield, that Wren struck her head directly in front of her, and that an investigating trooper admitted that it was possible that Mr. Farry may have

been in the middle of the vehicle instead of his bucket seat. Farry's head injury was on the right side of his forehead, indicating that he was facing towards Wren at the time of the accident.

While the evidentiary foundation for the requested instruction is weak, we believe that it would have been preferable for the court to have instructed that the deceased's conduct could be considered as bearing on the question of Wren's alleged negligence. The trial court, however, was otherwise correct in instructing that "contributory negligence is not a defense to a crime." Wren's contentions that the jury should have been instructed to consider Farry's alleged negligence in getting into Wren's car, not exiting when he had a chance and not using a seat belt were properly rejected as those allegations do not bear on the issue of Wren's culpable negligence.

The trial judge was careful to instruct the jury that the conduct of the victim could go to the issue of proximate cause; and the jury was instructed that, before finding Wren guilty of culpable negligence, it must find "that such criminal negligence was the proximate cause of the death" of Farry.

 That instruction permitted Wren's attorney to present arguments to the jury with reference to the deceased's conduct, and we note that he took full advantage of that opportunity. In all likelihood, if the jury had believed that the deceased's conduct had the effect of rendering nonculpable Wren's conduct in driving on the wrong side of the road, the jury would have found her conduct not to have been the proximate cause of Farry's death. Considering the speculative nature of the testimony concerning this aspect of the deceased's conduct and the instructions given, we hold that any error in failing to give the additional requested instruction was harmless. We apply the nonconstitutional test for

---

**9.** *See also, State v. Gordon*, 219 Kan. 643, 549 P.2d 886, 895 (1976); *People v. Joseph*, 11 Misc.2d 219, 172 N.Y.S.2d 463, 483 (1958); *State v. Phelps*, 242 N.C. 540, 89 S.E.2d 132, 135 (1955); *Cain v. State*, 55 Ga.App. 376, 190 S.E. 371, 375 (1937).

harmless error [10] and conclude that it can fairly be said that there was no error which appreciably affected the jury's verdict.[11]

## THE PROXIMATE CAUSE INSTRUCTION

Wren contends that the judge failed properly to emphasize that the defendant's actions must be *the* proximate cause rather than *a* proximate cause of the death. She submitted a proposed instruction which would have supplemented the proximate cause instruction. It provided in part:

> The defendant's act in a prosecution for negligent homicide must be *the* proximate cause and not *a* proximate cause of death. The state must prove beyond a reasonable doubt that the defendant's unlawful act was the proximate cause of the death of Thomas Farry. (emphasis added)

The court's instruction on proximate cause read:

> In addition, before you can find the defendant guilty, you must find not only that the defendant was guilty of culpable negligence as set forth in these instructions, but must go further and find that such criminal negligence was the proximate cause of the death of the said Thomas J. Farry.
>
> The proximate cause is that cause which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the result, and without which the result would not have occurred. It is the efficient cause—the one that necessarily sets in operation the factors that accomplish the result.
>
> If you find that there was an independent intervening act that the defendant could not have foreseen then you must find that the Defendant's acts were not the proximate cause of the deceased's death.

Appellant claims that the court erred in not specifically instructing the jury that there existed a lower standard of proximate cause in civil cases that was inapplicable in negligent homicide, citing *People v. Buck*, 71 Mich.App. 28, 246 N.W.2d 351, 352 (1976), in which the Michigan Court of Appeals reversed an instruction that the jury could find guilt if the conduct were found to be "a" proximate cause of the accident. That court relied in part on *People v. Scott*, 29 Mich.App. 549, 185 N.W.2d 576 (1971), a case which held that the criminally negligent act must be the *only* direct and proximate cause in order for criminal liability to attach. *Id.* at 581. We decline to accept this reasoning. We note that *Scott* purported to rely on *Commonwealth v. Root*, 403 Pa. 571, 170 A.2d 310 (1961), but, nevertheless, disregarded the concession of the *Root* case that there can be more than one proximate cause of death. *Id.* 170 A.2d at 313.

The state, in a criminal case, is not required to prove beyond a reasonable doubt that the defendant's negligence was the *sole* proximate cause of the death.[12] Where a defendant negligently creates a risk of death to another person, the fact that the person actually died as a result of the combination of that negligence plus some other contributing factor does not serve to exculpate.[13] So long as the defendant's acts are found by the jury to rise to the high level of "culpable negligence"[14] and so long as the defendant's acts actually constitute a substantial factor in causing the death, absent any factors to justify or

---

**10.** *Love v. State*, 457 P.2d 622, 630–31 (Alaska 1969).

**11.** Criminal Rule 47 provides that any error which does not affect substantial rights shall be disregarded. Here, there was no error which affected Wren's substantial rights.

**12.** *Commonwealth v. Root*, 403 Pa. 571, 170 A.2d 310, 313 (1961).

**13.** Perkins on Criminal Law, 695–96 (2d ed. 1969); *People v. Lewis*, 124 Cal. 551, 57 P. 470, 473 (1899) (mortal wound inflicted by defendant a concurrent cause of death, along with victim's subsequent slashing of his own throat).

**14.** *Stork v. State*, 559 P.2d 99, 101 (Alaska 1977).

excuse,[15] there is liability for the negligence.[16]

We find that the court did not err in failing to include the additional requested instruction.

AFFIRMED.

BURKE, J., with whom RABINOWITZ, J., joins, concurring.

BURKE, Justice, with whom RABINOWITZ, Justice, joins, concurring.

I disagree with that portion of the majority opinion suggesting that it "would have been preferable for the court to have instructed that the deceased's conduct could be considered as bearing on the question of Wren's alleged negligence." My own view is that there was simply no evidence from which a reasonable person could conclude that the victim acted in any way to cause Wren's vehicle to cross the centerline. Such an instruction would have encouraged the jurors to engage in pure speculation. As I understand the law it is the obligation of our trial courts to discourage such speculation wherever possible.

Otherwise, I concur.

---

**15.** *See* AS 11.15.090, 11.15.100 and 11.15.110.

**16.** In a damage case, the question of causation was explored in *State v. Abbott*, 498 P.2d 712, 726–27 (Alaska 1972), and it was decided that the negligence need be a "substantial factor" in bringing about the injury. We reaffirmed the statement in *City of Fairbanks v. Nesbett*, 432 P.2d 607, 610–11 (Alaska 1967), that "[i]t is not necessary for the actor's conduct to be 'the' legal cause of an injury for liability to attach to the actor. It is only necessary that such conduct be 'a' legal cause" (footnote omitted). We continued, stating that if:

. . . two forces are operating to cause the injury, one because of the defendant's negligence and the other not, and each force by itself is sufficient to cause the injury, then the defendant's negligence may be found to be a substantial factor in bringing about the harm. 498 P.2d at 727. (footnote omitted)