**STATE of Alaska, Appellant,**

v.

**Robert W. MALONE, Appellee.**

**No. A–3596.**

Court of Appeals of Alaska.

Sept. 6, 1991.

Bill D. Murphree, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Douglas B. Baily, Atty. Gen., Juneau, for appellant.

Nelson Traverso, Asst. Public Advocate, Fairbanks, and Brant McGee, Public Advocate, Anchorage, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

MANNHEIMER, Judge.

Robert W. Malone, fleeing from a traffic stop, led police on a high-speed chase through Fairbanks. During the chase, a police car collided with a vehicle driven by another motorist; both the officer and the motorist were injured. A grand jury returned a multi-count indictment against Malone. Two of the counts charged Malone with assault against the police officer and against the motorist.

Responding to Malone's pre-trial motion, Superior Court Judge Jay Hodges dismissed these two assault charges; Judge Hodges ruled that the grand jury had been inadequately instructed on legal concepts of causation. The State of Alaska has appealed. We reverse the superior court's decision and reinstate the two assault charges.

Fairbanks Police Officer Perry Williamson stopped Malone for a traffic offense. A computer check showed that Malone did not have a valid driver's license. Officer Williamson asked Malone to get out of his car; Malone refused. When Williamson started to open the door of Malone's car, Malone put the car in gear and drove away. Williamson jumped into his patrol vehicle and gave chase.

During the ensuing high-speed chase through the streets of Fairbanks, Williamson's patrol vehicle collided with a third car driven by Michael Hildebrandt. Williamson's left leg was broken above the ankle. Hildebrandt suffered more serious injuries: his left thigh, right wrist, and nose were broken, and his spleen was so severely damaged that it had to be surgically removed.

Based upon the injuries suffered by Williamson and Hildebrandt in this motor vehicle collision, Malone was indicted for first-degree assault on Hildebrandt (reckless infliction of serious physical injury by means of a dangerous instrument, AS 11.41.200(a)(1)), and for third-degree assault on Williamson (reckless infliction of physical injury by means of a dangerous instrument, AS 11.41.220(a)(2)).

Malone asked the superior court to dismiss these two assault charges, arguing that the grand jury had been misinstructed on the law of proximate cause. Specifically, Malone argued that the collision could have been due to either Williamson's or Hildebrandt's negligent conduct, and that their negligence could have constituted a "superseding" or "intervening" cause of the collision. Malone argued that the mere existence of this possibility required the prosecuting attorney to instruct the grand jury on the law of superseding causation—since a grand jury finding that Williamson's or Hildebrandt's conduct had been a superseding cause of the collision would mean that Malone bore no criminal responsibility for the injuries suffered by Williamson and Hildebrandt.

Malone's motion did not point to any evidence of Williamson's or Hildebrandt's negligence. However, in his reply and at oral argument on the motion, Malone relied upon 13 AAC 02.517(f), a regulation which, according to Malone, requires a police officer in pursuit of a suspected lawbreaker to stop his patrol vehicle at each stop sign and red light.

Judge Hodges granted Malone's motion to dismiss the two charges. Judge Hodges took issue with the prosecuting attorney's instruction to the grand jury that Malone should be held responsible for Williamson's and Hildebrandt's injuries if his conduct

was a substantial contributing factor in causing those injuries, regardless of anyone else's negligence. The judge ruled that this explanation of probable cause was incomplete, that the grand jury should have been told about the doctrine of "intervening cause".

For purposes of deciding this appeal, Malone does not dispute that he acted with the required culpable mental state (recklessness concerning the possibility that serious physical injury might result from his conduct). The sole question presented is whether, under the circumstances of this case, it is possible that the law might not view Malone's conduct as a "cause" of Williamson's and Hildebrandt's injuries.

A criminal defendant can be held responsible only for injuries that "result from" or are "caused by" his conduct. But the defendant's conduct need not be the sole factor in producing the injury. Rather, the test is whether the defendant's conduct was a "substantial factor" in bringing about the result. *R. Perkins & R. Boyce, Criminal Law* (3rd ed. 1982), § 9, pp. 779–780. *See also Kusmider v. State*, 688 P.2d 957, 959–960 (Alaska App.1984).

Since a defendant's conduct need not be the sole cause of the injury, a defendant will be held accountable for an injury or death resulting from his conduct even though it can be shown that the negligence of some other person also contributed in a substantial degree to causing the injury or death. Contributory negligence of the victim does not constitute a defense to criminal charges. *Wren v. State*, 577 P.2d 235, 240 (Alaska 1978); *Lee v. State*, 760 P.2d 1039, 1042 (Alaska App.1988); *Perkins*, pp. 785–87. Similarly, the asserted negligence of third parties is no defense. *Kusmider*, 688 P.2d at 959–960; *State v. Inger*, 292 N.W.2d 119, 123 (Iowa 1980).

This rule of law—that negligence of the victim or of third persons will not dispel a defendant's responsibility for an injury or death—is simply a specific application of the general rule that a defendant who acts with the required culpable mental state will be held criminally responsible for injuries that result from other people's normal or foreseeable reactions to his conduct. *See* Beale, *The Proximate Consequences of an Act*, 33 Harv.L.Rev. 633, 646–652 and 655–58 (1920). This remains true even if the person responding to the defendant's conduct is himself negligent (that is, acts unreasonably), so long as this negligent or unreasonable conduct is a normal or foreseeable response to the defendant's conduct. *Perkins*, pp. 803–04. *W. LaFave & A. Scott, Substantive Criminal Law* (1986), § 3.12, pp. 407–09, 413–15.

For example, a defendant who knowingly sets fire to a building will be criminally liable if the owner of property stored in the building is injured or killed after going into the burning building to try to save the property. *State v. Leopold*, 110 Conn. 55, 147 A. 118, 121 (1929), cited in *Perkins*, pp. 798. Another example is found in *People v. Kibbe*, 35 N.Y.2d 407, 362 N.Y.S.2d 848, 850, 321 N.E.2d 773, 775 (1974), *aff'd* 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977), a case in which a robber left his intoxicated victim helpless in the middle of the road at night during a snow storm. The robber was held liable for reckless homicide when a driver traveling down the highway later struck and killed the victim. The court rejected the defendant's claim that the driver's conduct should be considered a superseding cause of the homicide. And, applying this same rule, the court in *United States v. Guillette*, 547 F.2d 743, 749–750 (2nd Cir.1976), held that the defendants, who had engaged in a campaign of threats to deter a witness from testifying against them, were criminally responsible for the witness's death when the witness, after rigging a booby-trap bomb intended to injure the defendants, killed himself by accidentally detonating the bomb.

The same rule applies when a person charged with responding to the defendant's action (for example, a fire fighter or a police officer) exposes himself or herself to danger and is injured or killed or responds in a way that results in injury to a third person. *Perkins*, pp. 798, 804–09. Thus, if a defendant, apprehended in the course of perpetrating a crime, engages in a gun-

fight with the police, the defendant will be held criminally responsible if a bystander is shot, no matter whether the bullet was fired by the defendant or the police. *La-Fave & Scott*, § 3.12(h), Vol. 1, p. 417.

■ Although a defendant's criminal responsibility is broad, it is not limitless. The law does not hold a defendant responsible if the injury or death, while perhaps linked to the defendant's conduct, is primarily caused by abnormal, unforeseeable conduct on the part of the victim or of a third person, so that it no longer seems fair to say that the injury was "caused" by the defendant's conduct. When this occurs, the law no longer views the other person's conduct as simply a contributing cause of the injury. Instead, the law calls the other person's conduct a "superseding" or "intervening" cause of the injury—meaning that the defendant is excused from liability.

Thus, the conduct of the victim or of third persons is sometimes relevant in assessing the defendant's criminal responsibility:

It must not be assumed that negligence of the [victim] or of another is to be entirely disregarded. Even though the defendant was criminally negligent in his conduct, it is possible for negligence of the [victim] or another to intervene between [the defendant's] conduct and the [injury] in such a manner as to constitute a superseding cause, completely eliminating the defendant from the field of proximate causation. This is true only in situations in which the second act of negligence looms so large in comparison with the first that the first is not to be regarded as a substantial factor in the final result.

*Perkins*, p. 787. *Accord, Wren v. State*, 577 P.2d at 240.

Nevertheless, once a defendant has set events in motion, no conduct of the victim or of a third person will be a "superseding" or "intervening" cause (that is, one that relieves the defendant of criminal responsibility for an ensuing injury or a death) if (1) the defendant's conduct created or enhanced the risk that someone would suffer the type of injury actually suffered by the victim, and (2) the contributing conduct of the victim or of the third person was either a normal reaction to the defendant's conduct or was a reasonably foreseeable consequence of the defendant's conduct. *Perkins*, pp. 814–15.

The Alaska Supreme Court has adopted this same view. In *Fairbanks v. Nesbett*, 432 P.2d 607, 611 n. 7 (Alaska 1967), the court stated that an "intervening cause"

must [not be] produced by the [defendant's] wrongful act or omission [and must not be] the natural or probable consequence of such act or omission. It must be [an act or occurrence that] could not reasonably have been anticipated or foreseen by the [defendant], and it must prevent the natural and probable result of the [defendant's] act [or] omission[, producing] a different result not reasonably anticipated.

The court once again addressed this subject in *Morris v. Farley Enterprises, Inc.*, 661 P.2d 167, 170 (Alaska 1983), indicating that the term "superseding cause" was actually a legal conclusion, an after-the-fact analysis of the relationship between the defendant's conduct and a resulting injury:

[T]he perspective to be taken in deciding whether a superseding cause exists is one of hindsight, asking whether, looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that [the conduct] should have brought about the harm.

Returning to the circumstances of Malone's case, it is true that Williamson and Hildebrandt, like all drivers, were required to exercise care for the safety of other motorists. In fact, Alaska law expressly imposes this duty of care upon police officers driving patrol cars in emergency situations. For example, 13 AAC 02.140(c) and 13 AAC 02.517(f) provide that drivers of authorized emergency vehicles, despite their exemption from many of the normal rules of the road, remain under a duty "to drive with regard for the safety of all persons using the highway".

■ But it is both natural and foreseeable that, during the high-speed chase of a suspected lawbreaker, police officers may

engage in driving maneuvers that involve calculated risk. Moreover, it is natural and foreseeable that, under the stress of the situation, police officers may engage in driving that, viewed in hindsight, fails to satisfy the standard of care required by 13 AAC 02.140(c) and 517(f). It is also natural and foreseeable that uninvolved motorists, suddenly confronted with the surprising and dangerous situation of a high-speed chase, may either fail to react in time to the unexpected peril or may react with less than normal prudence. Therefore, a defendant who initiates a high-speed chase may be held criminally responsible for injuries suffered by police officers and other motorists even if it can be demonstrated that the officers or motorists themselves acted negligently.

■ There is no evidence in the grand jury record tending to show that either Williamson or Hildebrandt caused the collision by engaging in extraordinary, unforeseeable conduct. Malone asserts, as he did in the trial court, that Officer Williamson violated Alaska law—specifically, 13 AAC 02.517(f)—when he entered the controlled intersection without coming to a complete stop. It appears to us that Malone has misinterpreted this regulation; 13 AAC 02.517(f) does not require a police vehicle responding to an emergency to come to a full stop at every intersection.[1]

■ However, our decision does not rest on this interpretation of 13 AAC 02.517. Even if Williamson violated the regulation and thus failed to live up to the standard of driving conduct required of police officers, this would prove no more than negligent conduct on the officer's part, and any such negligence was a foreseeable result of Malone's conduct.

---

1. The regulation at issue, 13 AAC 02.517, contains two pertinent subsections. Subsection (a) provides:

> The driver of an authorized emergency vehicle, when ... in pursuit of an actual or a suspected violator of a statute, regulation, or ordinance, ... may disregard a statute, regulation, or ordinance governing the operation, stopping, standing, or parking of a vehicle, except as provided in this section.

while subsection (f) states:

> The provisions of this section do not relieve the driver of an authorized emergency vehicle or a vehicle displaying a flashing blue light from the duty to drive with regard for the safety of all persons, nor do the provisions of this section allow the driver of a vehicle displaying a flashing blue light to proceed past a stop sign or red signal without first stopping.

Interpretation of these provisions requires knowledge of how 13 AAC defines "authorized emergency vehicle" and "vehicle displaying a flashing blue light".

"Authorized emergency vehicle" is defined in 13 AAC 04.010(3) and 13 AAC 04.090. An "authorized emergency vehicle" must have either a flashing or rotating red light. 13 AAC 04.090(a). The one exception is for police "authorized emergency vehicles". Such vehicles are exempted from the red light requirement by 13 AAC 04.090(c); that is, police may display a flashing red light at their option, or they may drive unmarked cars.

13 AAC 04.090(g) gives "authorized emergency vehicles" the option of displaying a second color of light in addition to the required flashing red light. This second color may, but need not be, the flashing blue light described in 13 AAC 04.100.

"Vehicle displaying a flashing blue light" is defined in 13 AAC 04.100. This category of vehicles includes private vehicles of fire fighters and private vehicles of persons certified to provide emergency lifesaving or medical services. 13 AAC 04.100(a) and (g).

Title 13 of the Administrative Code often distinguishes between "authorized emergency vehicles" and "vehicles displaying a flashing blue light". For instance, 13 AAC 02.140(b) requires "flashing blue light" vehicles to yield the right-of-way to "authorized emergency vehicles" responding to an emergency. It does not appear to us that the Department of Public Safety intended to have the application of this right-of-way rule hinge on whether a police department chooses to exercise its option under 13 AAC 02.517(g) to have its patrol cars display a second flashing light of the color blue. Thus, a police department's choice to adopt blue as the color of its second flashing light (along with the required red) will not convert an "authorized emergency vehicle" into a "vehicle displaying a flashing blue light".

Under 13 AAC 02.517(f), the duty of careful driving applies to the drivers of both categories of vehicles: drivers of authorized emergency vehicles (including police vehicles) displaying the lighting required by 13 AAC 04.090, and drivers of vehicles displaying flashing blue lights under 13 AAC 04.100. However, the duty of stopping at controlled intersections applies only to the second category of vehicles (those displaying flashing blue lights). Thus, Officer Williamson, who was driving an "authorized emergency vehicle", was not obliged to come to a complete stop at the intersection.

The superior court found that the prosecutor's instructions to the grand jury adequately explained the concept of proximate causation. The superior court threw out the two charges against Malone because the prosecutor had failed to explain the doctrine of "superseding cause" to the grand jury. But, in the absence of any evidence showing that the injuries suffered by Williamson and Hildebrandt were the result of extraordinary, unforeseeable conduct on their part (or anyone else's part), Malone was not entitled to an instruction on "superseding" or "intervening" causation. *See Kusmider v. State, supra,* holding that a trial judge is entitled to exclude proffered evidence of a third person's negligence when this evidence, even if believed, "could not, as a matter of law, have established a break in the chain of proximate causation". 688 P.2d at 960.

Moreover, even if evidence were to exist tending to show that the collision was caused by extraordinary, unforeseeable conduct on the part of Williamson, Hildebrandt, or some other person, it is questionable whether this is an issue to be litigated in a grand jury context. Both the Alaska Supreme Court and this court have consistently held that grand jury proceedings are not to become "mini-trials"—that a prosecuting attorney is not obliged to develop the evidentiary bases for potential defenses, nor is he or she obliged to instruct the grand jury on potential defenses. *Frink v. State,* 597 P.2d 154, 166 (Alaska 1979); *Abruska v. State,* 705 P.2d 1261, 1272–73 (Alaska App.1985); *Dyer v. State,* 666 P.2d 438, 444 (Alaska App.1983); and *Tookak v. State,* 648 P.2d 1018, 1021 (Alaska App. 1982). *See also Castillo v. State,* 614 P.2d 756, 762–63 (Alaska 1980), and *Oxereok v. State,* 611 P.2d 913, 916–18 (Alaska 1980), holding that a prosecutor need not instruct a grand jury on potential lesser offenses.

The decision of the superior court is REVERSED and the two counts of the indictment are reinstated.