STATE of Alaska, Appellant,

v.

Kelvin A. WALKER, Appellee.

No. A–4979.

Court of Appeals of Alaska.

Dec. 23, 1994.

John A. Scukanec, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Bruce M. Botelho and Charles E. Cole, Attys. Gen., Juneau, for appellant.

Gina M. Tabachki, Asst. Public Defender, Fairbanks, and John B. Salemi, Public Defender, Anchorage, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

MANNHEIMER, Judge.

Kelvin A. Walker was charged with two counts of first-degree assault, AS 11.41.200(a)(1) and (a)(2). A superior court jury convicted him of one count and acquitted him of the other. Acting Superior Court Judge Charles R. Pengilly concluded that the jury's verdicts were inconsistent, and so he granted Walker a new trial on the surviving count. The State appeals Judge Pengilly's order. For reasons explained below, we remand this case to the superior court for reconsideration of the order granting a new trial.

■ The first issue we must address is the State's right to appeal Judge Pengilly's order. In this context, the term "appeal" refers to a party's right to demand that an appellate court review a lower court's decision—as opposed to a "petition for review", the procedural device which allows a party to request an appellate court's review of a lower court's decision, but which also allows the appellate court to decline the case without reaching the merits of the lower court's ruling. See State v. Browder, 486 P.2d 925, 930 (Alaska 1971).

■ Formerly, Alaska law limited the State's right of appeal in criminal cases to two specific situations: when the State wished "to test the sufficiency of the indictment or information" after the superior court had dismissed the charging document, and when the State wished to challenge a sentence "on the ground that the sentence is too lenient". This limitation was first enacted in former AS 22.05.010 and, after the creation of the court of appeals, the same limitation was re-enacted in former AS 22.07.020(d)(2).

In State v. Michel, 634 P.2d 383, 384–85 (Alaska App.1981), this court construed former AS 22.07.020(d)(2) to allow the State to appeal any final decision in a criminal case unless such an appeal would run afoul of the guarantee against double jeopardy. However, in Kott v. State, 678 P.2d 386, 388–390 (Alaska 1984), the supreme court rejected this court's interpretation of the statute and held, instead, that the State's power to appeal trial court decisions in criminal cases was strictly limited to the two types of appeal listed in the statute.

In 1993, prompted by a request from the Department of Law, the Alaska Legislature amended AS 22.07.020(d)(2). See Ch. 71, § 2 SLA 1993 (effective June 26, 1993). This statute now reads:

> (d) An appeal to the court of appeals is a matter of right in all actions and proceedings within its jurisdiction except that
>
> . . . .
>
> (2) the state's right of appeal in criminal cases is limited by the prohibitions against double jeopardy contained in the United States Constitution and the Alaska Constitution.

In the present case, the State contends that this amended statute gives the State the right to appeal (that is, demand our review of) Judge Pengilly's decision to grant Walker a new trial.

■ The State's argument founders on the rule that an appeal (in all cases, civil and criminal) can normally be taken only from a "final judgement" or a "final order". See United States v. Nixon, 418 U.S. 683, 690, 94 S.Ct. 3090, 3099, 41 L.Ed.2d 1039 (1974). See also W. LaFave & J. Israel, Criminal Procedure (1984), § 26.2(a), Vol. 3, pp. 182–84; 15A C.A. Wright A.R. Miller & E.H. Cooper, Federal Practice & Procedure (2nd ed. 1992), § 3907.

■ Though the Alaska Supreme Court stated in Juneau v. Thibodeau, 595 P.2d 626, 628 (Alaska 1979), that we should employ

common sense and practicality when determining whether a lower court's decision is a "final" order for purposes of appeal, the basic test of finality continues to be whether the lower court's order "disposes of the entire case, ... ends the litigation on the merits[,] and leaves nothing for the court to do but execute the judgment". *Greater Anchorage Area Borough v. City of Anchorage*, 504 P.2d 1027, 1030 (Alaska 1972). *See also LaFave & Israel, supra.*

■ Courts and commentators agree that orders granting new trials are not "final" orders and, for this reason, such orders are not appealable unless the legislature has expressly granted the government the right to appeal them. *LaFave & Israel*, § 26.3(c), Vol. 3, pp. 220–21. "[A]n order granting a new trial is interlocutory in nature and therefore not immediately appealable". *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34–35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980). "This rule is obeyed virtually without exception." 15B *Wright, Miller & Cooper*, § 3915.5, p. 298.

An order granting a new trial has none of the earmarks of a final decision. It settles no rights between the parties, but instead initiates a new proceeding to determine those rights. Accordingly, such orders have almost uniformly been held interlocutory, and hence nonappealable, both in civil cases, and in criminal cases.

*United States v. Sam Goody, Inc.*, 675 F.2d 17, 20 (2nd Cir.1982) (citations and footnote omitted). *See also J.A. Jones Constr. Co. v. Steel Erectors, Inc.*, 901 F.2d 943, 944 (11th Cir.1990); *Evers v. Equifax, Inc.*, 650 F.2d 793, 796 (5th Cir.1981); *Juneau Square Corp. v. First Wisconsin Nat. Bank*, 624 F.2d 798, 806 (7th Cir.1980); *United States v. Taylor*, 544 F.2d 347, 349 (8th Cir.1976).

The State nevertheless argues that AS 22.07.020(d)(2) confers the right to appeal *any* order of a trial court, whether that order is "final" or not. The State's argument rests on the fact that, when the Alaska Legislature amended AS 22.07.020(d)(2), the legislature declared that the newly-amended statute was "based on the provisions of 18 U.S.C. § 3731". *See* Ch. 71, § 1 SLA 1993.

18 U.S.C. § 3731 is a statute that abrogates the finality requirement in several situations that arise in federal criminal cases. For federal litigation (both civil and criminal), the rule of finality is codified in 28 U.S.C. § 1291. Under 28 U.S.C. § 1291, a litigant normally can take an appeal only "from [a] final decision[ ] of the district court[ ]". However, 18 U.S.C. § 3731 gives federal prosecutors the right to appeal certain types of trial court orders even though these orders are non-final.[1]

One of the non-final appealable orders listed in 18 U.S.C. § 3731 is an "order ... granting a new trial after verdict or judgment". From this, and from the legislature's statement that AS 22.07.020(d)(2) is based on 18 U.S.C. § 3731, the State infers that AS 22.07.020(d)(2) was intended to allow the government to appeal orders granting new trials in criminal cases. However, neither the federal courts' interpretation of 18 U.S.C. § 3731 nor the legislative history of AS 22.07.020(d)(2) supports the State's expansive interpretation of the statute.

Even though 18 U.S.C. § 3731 gives the federal government the right to appeal specified non-final orders, the statute does not give the government a carte-blanche exemption from the final judgement rule.

Section 3731 can, and does, make it lawful for the government to take certain appeals

---

1. The pertinent portion of this statute reads:

**§ 3731. Appeal by United States**
In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information or granting a new trial after verdict or judgment, as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

even though there is no final judgment. For example, section 3731 expressly authorizes the government to appeal interlocutory suppression orders under certain circumstances. However, Congress intended for section 3731 to waive the final judgment requirement of section 1291 in certain limited circumstances only. It did not intend for section 3731 to eliminate the final judgment requirement entirely. Thus, unless the right to take an interlocutory appeal is expressly provided in section 3731, government appeals must satisfy the final judgment requirement of section 1291 as well as the requirements of section 3731.

*United States v. Martinez,* 763 F.2d 1297, 1308 n. 10 (11th Cir.1985). *See also United States v. Dior,* 671 F.2d 351, 355 (9th Cir. 1982); *United States v. Sam Goody, Inc.,* 675 F.2d 17, 23 (2nd Cir.1982).

For instance, prior to 1984, federal courts routinely held that the government could not appeal orders granting a new trial in criminal cases because such orders were not listed in 18 U.S.C. § 3731. *See United States v. Alberti,* 568 F.2d 617 (2nd Cir.1977); *United States v. Taylor,* 544 F.2d 347 (8th Cir.1976). In response, Congress amended the statute in 1984 to expressly provide that the government could appeal an order granting a defendant a new trial. Comprehensive Crime Control Act, Public Law No. 98–473, § 205, 98 Stat. 1986 (1984).[2]

■ Thus, even though 18 U.S.C. § 3731 allows the federal government to appeal certain trial court orders that clearly are not final, the statute does not abrogate the final judgement rule. It merely creates specific exceptions to that rule.

Turning to the legislative history of AS 22.07.020(d)(2), we conclude that the legislative proceedings demonstrate an intent to expand the State's right of appeal in criminal cases. However, the legislative history does not demonstrate that the legislature wished to exempt the State from the final judgement rule in criminal cases, nor does the legislative history support the State's contention that

the legislature intended to enact the specific exceptions to the final judgement rule listed in 18 U.S.C. § 3731.

The House Judiciary Committee considered House Bill 181, the legislative proposal that eventually was enacted as AS 22.07.020(d)(2), at a meeting on March 8, 1993. At this meeting, representatives of the executive branch explained the goals they had in mind when seeking reformulation of AS 22.07.020(d)(2). According to the minutes of the meeting, Assistant Attorney General Margo Knuth told the committee that the intent of the amended statute was to grant the State "the same right to appeal from adverse decisions in criminal cases that the federal government [enjoyed]". However, Ms. Knuth at the same time told the committee that the proposed change in the law would affect only "about twelve cases per year", cases in which the State suffered adverse evidentiary rulings that effectively ended a prosecution. Ms. Knuth told the committee that the proposed amendment "would not affect ... mid-trial petitions [for review]". Rather, "the bill would affect [only] evidentiary rulings which resulted in dismissal of a case".

One of the committee members asked why the proposed legislation carried a zero fiscal note (that is, why the fiscal note stated that the change in the law would have no monetary impact on state government). Ms. Knuth responded that the projected cost was zero because the amended statute "would not result in more appeals". Ms. Knuth told the committee that the cases the Department of Law was concerned about, cases in which the Department currently had to file a petition for review, amounted to approximately a dozen a year. Under the proposed legislation, the State would be able to file an appeal and litigate these issues at a normal pace rather than having to prepare a petition for review within a shortened time frame.

In further explanation of the proposed legislation, Ms. Gayle Horetski told the committee that the former language of AS

---

2. A number of state legislatures have also enacted laws that partially abrogate the finality requirement and give the government the right to

appeal orders granting new trials in criminal cases. *See LaFave & Israel,* § 26.3(c), Vol. 3, pp. 220–21.

22.07.020(d)(2) had once been "interpreted to be the same as federal law on [this] issue", but that "a 1983 [sic] Alaska Supreme Court decision" had given AS 22.07.020(d)(2) a narrower interpretation. Ms. Horetski was clearly referring to this court's decision in *Michel* and the supreme court's superseding decision in *Kott.* The intent of the proposed law, Ms. Horetski explained to the committee, was to alter the result of the supreme court decision and return the law to its former interpretation.

From this House Judiciary Committee hearing, it appears that the Department of Law was seeking a statute that would allow the State to appeal orders of dismissal— "final" orders—whenever such an appeal would not violate the guarantee against double jeopardy. The minutes of the committee hearing do not, however, support the State's contention that the legislature wished to abrogate the final judgement rule for the State in criminal cases. Nor do these minutes support the State's contention that the legislature, when it amended AS 22.07.020(d)(2), intended to give the State the right to appeal orders granting new trials or any of the other non-final orders listed in the federal statute.

We recognize that the legislature declared that AS 22.07.020(d)(2) is "based" on 18 U.S.C. § 3731. The statutory language that allows appeals by the State except where "limited by the prohibitions against double jeopardy contained in the United States Constitution and the Alaska Constitution" is clearly based on the wording of the federal statute. However, AS 22.07.020(d)(2) conspicuously omits the specific exceptions to the final judgement rule listed in 18 U.S.C. § 3731.

In sum, neither the wording of AS 22.07.020(d)(2) nor the minutes of the committee hearing on that legislation provide any support to the State's argument that the legislature wished to allow the State to appeal orders granting new trials or any other non-final orders. Congress did not abrogate the final judgement rule when it enacted the federal statute. We conclude that the Alaska Legislature likewise did not intend to abrogate the final judgement rule when it amended AS 22.07.020(d)(2). We further conclude that the Alaska Legislature did not intend to enact the specific exceptions to the final judgement rule found in 18 U.S.C. § 3731. Instead, the legislature intended to re-establish the rule announced by this court in *Michel*—the rule that "the state may appeal ... any adverse final judgment of a trial court in a criminal action ... unless [trial or] retrial would be barred by the double jeopardy clauses of the state or federal constitutions". *Michel,* 634 P.2d at 385.

Because Judge Pengilly's order granting a new trial in this case is not a final order, the State has no right to appeal it. Nevertheless, we have decided to treat the State's current appeal as a petition for review and to grant that petition, both because we find that the issue raised is a significant one and because the parties have, at this point, invested significant resources in this appellate litigation. We therefore turn to the substance of Judge Pengilly's order granting Walker a new trial.

■ Walker was accused of stabbing two men, Bond Sutton and Jerry Dompeling, with a knife during a confrontation at a party. The evidence at trial indicated that Walker stabbed Sutton once, in the upper right arm, severing his bicep. The evidence also indicated that Walker stabbed Dompeling three times in the back; one of these stab wounds was to Dompeling's neck, while the other two were to his chest. Although Dompeling's neck injury was minor, the two stab wounds to his chest were quite deep; they caused his lungs to collapse. Walker claimed that he had acted in self-defense. The jury acquitted Walker of assaulting Sutton, but they convicted Walker of assaulting Dompeling.

Walker sought a new trial, arguing that the jury's verdicts were so contradictory (given the evidence in the case) that it would be a miscarriage of justice to allow his conviction to stand. Judge Pengilly agreed. In his ruling, Judge Pengilly found that neither Sutton nor Dompeling had engaged in any behavior that would have justified Walker in believing that he was in danger of death or serious physical injury from them. Nevertheless, Judge Pengilly found that Walker

might reasonably have perceived a danger of death or serious physical injury stemming from the possibility that a fight might break out, a fight that would pit Walker (and a single friend) against Sutton, Dompeling, and the six to eight other men gathered at the house. Judge Pengilly further concluded:

> Reasonable minds could differ on the question of whether Kelvin Walker's belief that the use of deadly force was necessary to defend himself against serious physical injury was reasonable under the circumstances.

Finally, Judge Pengilly found that the assorted wounds Walker inflicted on Sutton and Dompeling all occurred "in the space of approximately one second" and that there was no change in the surrounding circumstances during that period of time which would have altered Walker's perception of the threat of serious physical injury.

Based on these findings of fact, Judge Pengilly concluded that the jury's verdicts were irreconcilable and that, therefore, Walker's assault conviction was "contrary to the clear weight of the evidence". The State seeks reversal of this ruling.

A trial judge's power to order a new trial is premised on the judge's obligation to prevent manifest injustice. Even though a jury's verdicts may not be logically inconsistent, the jury's verdicts may demonstrate such a skewed or inconsistent view of the evidence as to indicate that the jury either failed to understand the evidence, failed to understand the court's instructions, or simply returned a compromise verdict when the case proved too difficult. When a trial judge is convinced that there has been such a failure of justice, the judge may grant a new trial under the authority of Alaska Criminal Rule 33 even though the jury's verdicts are not, strictly speaking, logically inconsistent.

However, there are two main constraints on a judge's authority to grant a new trial.

First, it is the jury, not the trial judge, who is entrusted with the primary responsibility of determining issues of fact and, ultimately, the defendant's guilt or innocence. Before a trial judge negates the jury's decision by ordering a new trial, the jury's verdicts must clearly manifest the jury's failure to engage in a valid fact-finding process. Second, in cases such as Walker's where the allegation of flawed jury deliberations is premised on the ostensible inconsistency of the jury's verdicts, it must be clear that the flaw affected the jury's decision to convict (rather than merely the jury's concurrent decision to acquit).[3]

As Judge Pengilly viewed Walker's case, the crucial issue was whether Walker was legally justified in using deadly force against Sutton and Dompeling.[4] Judge Pengilly believed that this issue turned solely on the question of whether Walker had reasonably believed that he faced imminent death or serious physical injury when he stabbed Sutton and Dompeling. *See* AS 11.81.335(a).

Judge Pengilly found that no reasonable jury could have believed that Walker faced a threat of death or serious physical injury from the individual or combined actions of Sutton and Dompeling. However, Judge Pengilly found that reasonable jurors might have believed that Walker faced a threat of imminent serious physical injury from the possibility of a fight breaking out between Walker and the entire group of men present at the house.

Thus, Judge Pengilly concluded, any threat of serious physical injury had to arise from the situation as a whole, not from the actions of either Sutton or Dompeling. Because the jury's verdicts (acquitting Walker of assaulting Sutton but convicting him of assaulting Dompeling) appeared to Judge Pengilly to

---

**3.** That is, if the government's evidence was strong and the jury's decision to acquit is apparently inexplicable, there might be no manifest injustice in allowing the surviving conviction to stand. On the other hand, if the case was close and it clearly appears that the jury must have returned a compromise verdict, the jury's decision to compromise the case rather than lawfully decide the separate counts would be a flaw that infects both verdicts and would justify a judge in granting a new trial.

**4.** Under AS 11.81.900(b)(12), "deadly force" means "force that the person uses with the intent of causing, or uses under circumstances that the person knows create a substantial risk of causing, death or serious physical injury...."

rest on a distinction between the threat posed by Sutton and the threat posed by Dompeling, Judge Pengilly concluded that these verdicts were either inconsistent or were based on a manifestly flawed view of the evidence.

■ There is, however, another theory that possibly reconciles the verdicts. Even though a person faces a threat of imminent death or serious physical injury, so that he or she is legally entitled to use deadly force in self-defense, the law still requires that the force used be no greater than necessary to avert the danger.

Professor Paul Robinson, in his work *Criminal Law Defenses* (1984), addresses the defensive use of force and the requirement that a defendant's use of force be "necessary" under the circumstances.

One common formulation of the necessity requirement gives the actor the right to act when "such force is necessary to defend himself". But this formulation fails to highlight the two essential parts of the necessity requirement[:] force should be permitted only (1) when necessary and (2) to the extent necessary. The actor should not be permitted to use force when such force would be equally as effective at a later time and the actor suffers no harm or risk by waiting. Nor should the actor be permitted to use more force than is necessary for the defensive purpose.

P. Robinson, *Criminal Law Defenses*, § 131(c), Vol. 2, p. 77 (footnotes omitted).

The principle that defensive force should be no greater than necessary to avert the danger underlies the rules that define the situations in which a person is limited to non-deadly force and is not authorized to use deadly force. See AS 11.81.330 and 335. But even in circumstances when a person is permitted to use deadly force in self-defense under AS 11.81.335, that person may still not be authorized to employ all-out deadly force because such extreme force is not necessary to avert the danger. *Korzep v. Superior Court,* 172 Ariz. 534, 540, 838 P.2d 1295, 1301 (App.1991) (the defendant's "chosen degree of force [must not be] unreasonable to prevent the [threatened] crime"); *State v. Fischer,* 23 Wash.App. 756, 598 P.2d 742, 744 (1979) ("persons may use [only] that degree of force necessary to protect themselves as a reasonably prudent man or woman would use under the conditions"); *Leeper v. State,* 589 P.2d 379, 382 (Wyo.1979) ("To justify a homicide on [the ground of self-defense], it must appear that the defendant was in [imminent] peril of death or serious bodily harm [and it] must appear that the killing was a necessary and reasonable means of avoiding the threatened harm[.]")

For instance, AS 11.81.900(b)(12) defines "deadly force" as including the act of pointing a firearm at another person. Under the circumstances of a particular case, a jury might conclude that a defendant surrounded by a hostile crowd was justified in using deadly force to the extent of drawing a firearm, pointing it at the crowd, and firing the weapon into the air as a warning. However, the jury might also reasonably conclude that these same circumstances did not justify the defendant in intentionally shooting one of the crowd in the head.

In *State v. Bergeson,* 64 Wash.App. 366, 824 P.2d 515 (1992), the defendant was attacked by a man carrying a knife. The defendant, armed with a firearm, shot his attacker twice in the head from far enough away that no powder marks were left on the victim. The court agreed that the case presented a jury issue as to whether the defendant "used more force than was necessary under the circumstances". *Id.* 824 P.2d at 518.

In Walker's case, Judge Pengilly could properly find that neither the individual actions of Sutton nor the individual actions of Dompeling affected the quality of threat Walker faced from the crowd. However, Walker stabbed Sutton only once in the arm, while he stabbed Dompeling three times in the back, including two deep wounds to the chest that collapsed Dompeling's lungs. Given this evidence, the jury might have concluded that the severity of Walker's attack on Sutton was warranted by the circumstances but that the additional severity of Walker's attack on Dompeling was not necessary and was therefore not legally justified.

The trial judge, not this court, has the primary responsibility under Alaska Criminal Rule 33 for evaluating the jury's verdict in light of the evidence presented. However, Judge Pengilly's findings address only the question of whether Walker was justified in using deadly force against members of the crowd. His findings do not address the further issue of what degree of deadly force was warranted under the circumstances. Because Judge Pengilly apparently did not consider this issue in his ruling, we remand this case to him for reconsideration.

This case is REMANDED to the superior court for reconsideration in light of this opinion. We do not retain jurisdiction of this appeal.