Frank R. JOHNSON, Petitioner,

v.

STATE of Alaska, Respondent.

No. A–9444.

Court of Appeals of Alaska.

Feb. 1, 2008.

Sharon Barr, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Petitioner.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Respondent.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

This case involves the father of an infant child who was convicted of manslaughter for failing to take action to protect the infant from the life-threatening actions of the mother. The father was aware that the mother was subjecting the infant to prolonged starvation. However, the jury found that the infant ultimately died, not from starvation, but rather because the mother intentionally dropped the infant on its head, inflicting fatal skull and brain injuries. The question presented here is whether the father can validly be convicted of criminal homicide when the life-threatening conduct that ultimately caused the infant's death (the physical assault) is not the same type of life-threatening conduct that the father was aware of (the prolonged starvation of the infant).

Based on the Alaska Supreme Court's analysis of this issue in *P.G. v. Division of Family and Youth Services,* 4 P.3d 326 (Alaska 2000), we conclude that the jury could reasonably decide that, in light of the mother's prolonged starvation of her infant child, it was reasonably foreseeable that the mother might also resort to physical attacks on the infant. Thus, the jury could reasonably conclude that the father was reckless concerning this possibility, and that the physical attack on the child was not a "supersed-

ing" cause of the infant's death—*i.e.,* not a cause of death that would absolve the father of criminal responsibility.

## Background facts

The defendant in this case, Frank R. Johnson, was the father of an infant girl, Christina Takak. Christina died after prolonged abuse by her mother, Heather Takak (Johnson's long-time partner). According to the testimony presented at the trial in this case, Takak starved Christina to the point where the infant had essentially no fat left in her body, and her muscles had atrophied. One witness testified that Christina looked like a famine victim at the time of her death. The jury found, however, that the immediate cause of Christina's death was Takak's act of intentionally dropping Christina on the floor head-first, causing trauma to her skull and brain. This physical assault (which preceded Christina's death by one to three days) caused Christina's brain to hemorrhage and swell inside her skull, leading to her death.

Following Christina's death, the State prosecuted Johnson for second-degree murder. The State's theory of prosecution was premised on a parent's duty to protect their child from physical harm.[1] The State alleged that Johnson had violated his duty to protect Christina by failing to take action even though he knew that Takak was subjecting Christina to life-threatening starvation. The State acknowledged that Christina had suffered head trauma when Takak dropped her on the floor, but the State's medical witness testified that Christina's death was the joint result of the head trauma and the prolonged starvation.

At trial, Johnson contended that he was not around Christina enough to notice that she was being starved. Johnson presented several witnesses (including himself) to testify about the lengthy periods that he was away from the household. But Johnson also asserted an alternative defense: he argued that he should be acquitted even if the jury

---

1. *See Michael v. State,* 767 P.2d 193 (Alaska App.1988), *reversed on other grounds,* 805 P.2d 371 (Alaska 1991) (holding that a parent can be held responsible for an assault on their child if, knowing that the child is in danger of assault from a third person, the parent unreasonably fails to take action to protect the child).

found that he was aware that Takak was starving the infant—because the cause of Christina's death was not starvation (even in part).

Johnson presented a medical expert who testified that, even though Christina was being starved, the head trauma was the sole contributing cause of her death. In other words, the expert testified that Christina would have died from this trauma even if she had not been starved and weakened. In conjunction with this testimony, Johnson's attorney argued that even if Johnson was aware that Takak was starving their infant daughter, Johnson had no reason to be aware of the particular danger that Takak might physically assault the infant.

The parties agreed that if the jury convicted Johnson of the homicide, the judge would then ask the jury to fill out a special verdict form announcing their conclusion regarding the cause of the infant's death.

At the close of the trial, the jury acquitted Johnson of second-degree murder, but they found him guilty of the lesser offense of manslaughter. Pursuant to the agreement described in the preceding paragraph, the trial judge then asked the jury to fill out the special verdict form concerning the cause of death. This special verdict form asked the jurors to indicate their decision as to whether (1) Christina's death was caused solely by starvation, or (2) her death was caused solely by head trauma, or (3) her death was caused by both starvation and head trauma. The jurors unanimously declared that the head trauma was the sole cause of the infant's death.

After the jury announced its finding regarding the cause of death, Johnson asked the superior court to grant him a judgement of acquittal. Johnson noted that, even though the State might have proved that he recklessly disregarded the risk that Takak was starving the infant to the point where she might die, the jury's special verdict established that this starvation ultimately did not contribute to the infant's death. Rather, the jury found that the infant died solely as a result of the head trauma inflicted by Takak. Johnson argued that, if the head trauma was the sole cause of the infant's death, then his

manslaughter conviction had to be set aside because the State presented no evidence that Johnson was aware of the risk that Takak would physically assault the infant.

Superior Court Judge Ben J. Esch agreed that there was insufficient evidence to support the conclusion that Johnson was aware of the risk that Takak would physically assault Christina. Nevertheless, Judge Esch denied Johnson's motion for a judgement of acquittal.

Judge Esch acknowledged that the jury had declared (in their special verdict) that Christina died solely as a result of the head injuries. But Judge Esch found that the jury's conclusion was contrary to the weight of the evidence, as well as contrary to "reason and common sense".

(As explained above, the State's medical expert testified that Christina died as a combined result of the head trauma and the prolonged starvation. In his written decision, Judge Esch stated that "reason and common sense support [the] conclusion that any person who is severely malnourished faces a much reduced likelihood of survival when subjected to traumatic injury. [Thus, starvation] would be a substantial factor in causing any subsequent death.")

Given the testimony of the State's expert, Judge Esch concluded that there was sufficient evidence to support Johnson's conviction for manslaughter if the evidence presented at trial was viewed in the light most favorable to the State—even though there was insufficient evidence to support Johnson's guilt under the jury's theory of the case.

Because Judge Esch concluded that the evidence, viewed in the light most favorable to the State, was sufficient to support Johnson's conviction for manslaughter, Judge Esch denied Johnson's motion for a judgement of acquittal.

Nevertheless, because the jury's special verdict appeared to be contrary the jury's general verdict, Judge Esch ordered a new trial under the authority of Alaska Criminal Rule 33(a).

(Criminal Rule 33(a) authorizes a court to "grant a new trial to a defendant if required in the interest of justice." We have construed this rule as authorizing a court to grant a new trial when a jury's verdicts "demonstrate such a skewed or inconsistent view of the evidence as to indicate that the jury either failed to understand the evidence, failed to understand the court's instructions, or simply returned a compromise verdict when the case proved too difficult." [2])

Johnson now petitions us for review. Johnson argues that Judge Esch should have granted his motion for a judgement of acquittal.

In one paragraph of his brief, Johnson argues that the trial evidence was not even sufficient to prove that he was aware of the possibility that Christina was being starved to death. Given the testimony that Christina's body was visibly wasting away and that she had the physical appearance of a famine victim, this argument has no merit. However, the remainder of Johnson's brief is devoted to a more substantial claim.

Specifically, Johnson contends that even though the evidence may have been sufficient to support a conviction for manslaughter under the State's theory of the case (*i.e.*, the theory that Christina's death was due, at least in part, to starvation), this fact is irrelevant—because the jury expressly rejected the State's theory of the case and affirmatively found that Christina's death was solely due to the injuries suffered during the physical assault.

Johnson argues that any assessment of the sufficiency of the evidence must be made in light of the jury's express finding that the physical assault was the sole cause of death. Because Judge Esch concluded that the evidence was *not* sufficient to support Johnson's manslaughter conviction under the jury's view of the case, Johnson asserts that Judge Esch was obliged to enter a judgement of acquittal.

The State, in response, argues that the evidence was sufficient to support Johnson's manslaughter conviction even if Christina

died solely as a result of the head injuries. Thus, the State argues, we should uphold Judge Esch's ruling on Johnson's motion for a judgement of acquittal, but we should reverse Judge Esch's decision to grant Johnson a new trial.

*Why we conclude that the evidence supports Johnson's conviction for manslaughter, even given the jury's decision as to the cause of Christina's death*

■ As explained above, Johnson was convicted of manslaughter under the theory that he knowingly breached his parental duty to protect Christina. The crime of manslaughter is defined in AS 11.41.120(a)(1) as "recklessly caus[ing] the death of another person" (under circumstances not amounting to murder in the first or second degree).

To prove the crime of manslaughter under the facts of this case, the State had to establish (1) that Johnson had a legal duty to protect Christina, (2) that Johnson knew of a circumstance that triggered his duty to take protective action, (3) that he chose not to act (*i.e.*, he "knowingly" failed to take action), and (4) that he was reckless with regard to the possibility that his failure to act would result in his infant daughter's death—*i.e.*, he was aware of and consciously disregarded a substantial and unjustifiable risk that, if he failed to act, Christina would die.[3]

(See our discussion of this point of law in *Willis v. State*, 57 P.3d 688, 694–95 (Alaska App.2002).)

The parties to this appeal agree that Johnson, as Christina's father, had a legal duty to protect her. And, as we indicated in the preceding section, we conclude that the evidence (viewed in the light most favorable to the jury's verdict) was sufficient to prove that Johnson was aware of a circumstance that triggered his duty to take protective action: he was aware that Heather Takak was starving Christina to death. Moreover, the evidence was likewise sufficient to prove that Johnson knowingly failed to take action to protect Christina from Takak.

---

2. *State v. Walker*, 887 P.2d 971, 977 (Alaska App.1994).

3. See AS 11.81.900(a)(3), the definition of "recklessly".

The main dispute in this case arises from the fact that, according to the jury, Christina's death was not caused by this starvation. Rather, Christina died as a result of head injuries—injuries inflicted when Takak physically assaulted the infant.

Based on the jury's finding regarding the cause of death, Johnson argues that the State's proof of manslaughter fails on two grounds.

First, Johnson asserts that the evidence does not provide any basis for concluding that Johnson acted "recklessly" with respect to the possibility that Takak would physically assault Christina (as opposed to slowly starving the infant to death).

Second, Johnson asserts that even though Christina might eventually have died from starvation (the danger that Johnson knew about), Takak's physical assault on Christina was a "superseding" cause of death—*i.e.*, an unforeseeable danger that Johnson did not know about and could not reasonably have anticipated. In other words, Johnson argues that, as a matter of law, his failure to take action to protect Christina from starvation was not a cause of the infant's death.

Both of these arguments rest on the underlying premise that Johnson should be absolved of criminal liability because, even when the evidence is viewed in the light most favorable to the jury's verdict, (1) Takak's physical assault on Christina was an unforeseeable event, and (2) Christina's death resulted from this unforeseeable physical assault rather than from starvation.

When (as in Johnson's case) the government alleges that a defendant is criminally responsible for harm to another person because of the defendant's failure to perform a care-taking duty, a question often arises as to whether the conduct or event that caused the harm was foreseeable to a person in the defendant's position. As our supreme court explained in *Joseph v. State*, 26 P.3d 459 (Alaska 2001), the resolution of this question of foreseeability is relevant to two issues: the issue of whether the defendant failed to fulfill the care-taking duty imposed by law, and the issue of whether a "superseding cause" intervened to cause the harm.

With respect to the defendant's breach of duty, the foreseeability of the conduct or event that caused the harm is a necessary component of the government's effort to prove that the defendant was aware of the circumstance that triggered the defendant's duty to take protective action. And with respect to the issue of causation, the foreseeability of the harm *resolves* this issue—because, as a matter of law, "[a] reasonably foreseeable occurrence cannot be [a] superseding cause if the actor has a duty to prevent that occurrence." *Joseph*, 26 P.3d at 471. Thus, in cases where liability is premised on the defendant's alleged failure to fulfill a care-taking duty, the "superseding cause analysis coincides with the [breach of] duty analysis". *Id.*

In other words, the defendant's care-taking duty is breached only if the defendant was aware of the risk of harm and refrained from taking preventative action. If the defendant could not reasonably foresee the conduct that caused the harm, then there would be no breach of duty when the defendant failed to take action to prevent it. And, by the same token, if the conduct that caused the harm was not foreseeable, then that conduct would normally constitute a "superseding" cause of the harm.

But if, on the other hand, the danger *was* foreseeable to the defendant, this would establish a breach of duty and, at the same time, it would preclude a finding of "superseding" cause. As our supreme court stated in *Loeb v. Rasmussen*, 822 P.2d 914, 920 (Alaska 1991), "intervening causes which lie within the scope of the foreseeable risk, or [which] have a reasonable connection to it[,] are not superseding causes".

Thus, Johnson's contention in this appeal—his argument that the State's evidence was insufficient to support a manslaughter conviction if the cause of Christina's death was physical assault rather than starvation—stands or falls on the issue of whether a reasonable jury could conclude that Takak's physical assault on the infant was foreseeable.

As our supreme court stated in *Dura Corp. v. Harned*, 703 P.2d 396, 406 (Alaska 1985),

"[t]he issue of proximate cause is normally a question of fact for the jury to decide[,] and [it] becomes a matter of law only where reasonable minds could not differ." If no reasonable (and properly instructed) jury could have concluded that Takak's assault on the infant was foreseeable, then the State's evidence was insufficient to support Johnson's manslaughter conviction. If, on the other hand, a jury could reasonably have found that Takak's assault on the infant was foreseeable, then Johnson's sufficiency of the evidence argument fails.

The Alaska Supreme Court confronted a similar question of foreseeability in *P.G. v. Division of Family and Youth Services,* 4 P.3d 326 (Alaska 2000). In that case, the Division of Family and Youth Services placed a troubled teenager with a foster family, but DFYS did not warn the family that the teenager was emotionally disturbed, that he would smoke marijuana and become "moody and unpredictable", and that he had been suspended from school for overly rough horseplay.[4] The teenager later physically and sexually assaulted the family's two children. The family then sued the State, under the theory that DFYS knew or should have known that the teenager posed a serious threat of harm to the members of the family, and that DFYS had breached a duty of care to the family by not providing them with the pertinent information before placing the teenager in their home.[5]

The State conceded that DFYS owed a duty of care to the foster family, and that this duty included a duty to disclose pertinent information about the child to be placed in the family's home,[6] but the State contended that even if this duty had been breached, the State was not liable to the family. The State argued that, despite the teenager's emotional problems and past misbehavior, it was not foreseeable that he would engage in the specific acts for which the State was

being sued—*i.e.,* the physical and sexual assaults on the foster family's two children. The superior court, convinced by this argument, entered summary judgement in the State's favor.[7] The family then appealed.

The supreme court concluded that the State was not entitled to summary judgement. The court declared that, although the elements of negligence and causation "necessarily involve foreseeable risks", the concept of "foreseeability does not imply an ability to predict [the] precise actions or injuries" that form the basis of liability.[8]

The supreme court then explained:

When the risk created causes damage in fact, insistence that the precise details of the intervening cause be foreseeable would subvert the purpose of [the] law. Thus, Prosser and Keeton[9] note that there is "quite universal agreement that what is required to be foreseeable is only the 'general character' or 'general type' of the event or the harm, and not its 'precise' nature, details, or above all manner of occurrence." Or as the [Second] Restatement [of Torts] puts it,[10]

[t]he fact that the actor, at the time of his negligent conduct, neither realized nor should have realized that it might cause harm to another of the particular kind or in the particular manner in which the harm has in fact occurred, is not of itself sufficient to prevent him from being liable for the other's harm if his conduct was negligent toward the other and was a substantial factor in bringing about the harm.

*P.G.,* 4 P.3d at 334 (some footnotes omitted).

The court added that, when a duty of care has been breached, the doctrine of "superseding cause"—*i.e.,* an intervening cause of harm that will absolve the defendant of liability—is limited to situations where, "[examining] the event [in retrospect] and looking back from the harm to the actor's

4. *P.G.,* 4 P.3d at 328–29.

5. *Id.* at 329–330.

6. *Id.* at 331.

7. *Id.* at 332.

8. *Id.* at 334.

9. W. Page Keeton *et alia, Prosser and Keeton on the Law of Torts* (5th ed.1984), § 43, p. 299.

10. *Second Restatement of Torts* (1965), § 435, comment a.

negligent conduct, it appears ... *highly extraordinary* that [the actor's conduct] should have brought about the harm". *Id.* at 334 (emphasis in the original).

The supreme court then explained why the superior court was wrong to grant summary judgement to the State:

> [T]he superior court concluded as a matter of law that the information available to DFYS could not have allowed a reasonable person to predict [the teenager's] subsequent assaults on the [foster family's] children. But the accuracy of this conclusion is beside the point for purposes of determining DFYS's potential liability. For as we have explained, foreseeability does not require an ability to predict precise actions and exact injuries.
>
> Considering the evidence in the light most favorable to the [family], it does not seem "highly extraordinary" that DFYS's conduct "should have brought about the harm" allegedly committed. Reasonable jurors applying the correct standard of foreseeability could properly conclude that [DFYS's] alleged description of [the teenager] as "a really good kid" who "had never been in trouble before" and "had no problems" was highly misleading, that DFYS failed to make reasonable efforts to gather and disclose relevant information concerning [the teenager's] background, that this failure exposed the [family] to a foreseeable and unjustifiable risk that [the teenager] might engage in harmful actions, that the injuries he allegedly inflicted were of the general nature that could be expected, and that the [family] could have avoided these injuries—either by declining to accept [the teenager] as a foster child or by subjecting him to more rigorous supervision—had they known what they were entitled to know.
>
> Accordingly, we conclude that the superior court erred in finding [that there was] no genuine factual dispute on the issue of foreseeability and in granting summary judgment to the state on that basis.

*P.G.,* 4 P.3d at 335.

We acknowledge that the supreme court's ruling on the issues of foreseeability and superseding causation in *P.G.* was made in the context of a lawsuit in which a plaintiff sought money damages based on a theory of civil negligence—not in the context of a criminal prosecution. As the supreme court noted in *P.G.,* 4 P.3d at 334 n. 28, the law employs a broader definition of foreseeability "in matters of purely economic harm."

■ Nevertheless, we conclude that the same basic principle applies to criminal prosecutions based on a breach of the duty of care: the harm to the victim will be deemed "foreseeable" if the victim suffers the general type of harm that the defendant could foresee, even though the defendant might not have been able to foresee the precise nature or details of the harm, or the precise manner in which the harm was inflicted.

Turning to the facts of Johnson's case, the evidence (viewed in the light most favorable to the jury's verdict) is sufficient to support the conclusion that Johnson was aware of the danger that Christina would die of starvation if Johnson failed to intervene and stop Takak's mistreatment of the infant. Thus, the general type of harm that Johnson could foresee was Christina's death through her mother's abuse.

Based on the evidence in this case, a jury could reasonably conclude that it was foreseeable that Takak would grow tired of waiting for Christina to die of starvation, and that Takak would turn to other, more immediate forms of child abuse—actions such as physically assaulting the infant.

Under this analysis of the case, the fact that Christina ultimately died as a result of a physical assault would not exculpate Johnson. Johnson would still have breached his duty to protect Christina, and Christina's death by assault would not constitute a "superseding" cause of death—because it was foreseeable.

In other words, (1) the jury's decision to convict Johnson of manslaughter is consistent with the jury's finding that Christina's death was solely the result of the physical assault, and (2) the evidence presented at Johnson's trial is sufficient to support the jury's decision.

*Conclusion*

For the reasons explained here, Johnson is not entitled to a judgement of acquittal. However, the superior court's order granting Johnson a new trial is REVERSED. Barring any other requests for relief in the superior court, Judge Esch should proceed to sentence Johnson based on the jury's verdict.