**Frank R. JOHNSON, Petitioner,**

v.

**STATE of Alaska, Respondent.**

**No. S–13023.**

Supreme Court of Alaska.

Jan. 22, 2010.

Sharon Barr, Assistant Public Defender, Quinlan Steiner, Public Defender, Anchorage, for Petitioner.

Timothy W. Terrell, Assistant Attorney General, Anchorage, Talis J. Colberg, Attorney General, Juneau, for Respondent.

Before: FABE, Chief Justice, EASTAUGH, CARPENETI, WINFREE, and CHRISTEN, Justices.

*OPINION*

WINFREE, Justice.

## I. INTRODUCTION

We are asked in this petition for hearing to clarify the standard of foreseeability for a criminal prosecution based on reckless conduct.

A defendant is responsible for the natural consequences of his or her act or failure to act. But the defendant's liability for harm to another is not limitless because natural consequences are those a reasonable person could have foreseen. If the trier of fact finds a general type of harm was foreseeable, then the trier of fact must determine whether the actual harm was within the scope of risk hazarded by the defendant's conduct. The trier of fact need not find the exact manner in which the actual harm occurred was fore-

seeable, but the exact manner of harm must not be too remote a possibility or liability cannot be imposed.

Because in this case the court of appeals applied a foreseeability standard that did not expressly include a consideration of remoteness, we vacate its decision and remand for further proceedings consistent with the standard articulated in this opinion.

## II. FACTS AND PROCEEDINGS

The court of appeals succinctly set forth the underlying facts of this case as follows:

> The defendant in this case, Frank R. Johnson, was the father of an infant girl, Christina Takak. Christina died after prolonged abuse by her mother, Heather Takak (Johnson's long-time partner). According to the testimony presented at the trial in this case, Takak starved Christina to the point where the infant had essentially no fat left in her body, and her muscles had atrophied. One witness testified that Christina looked like a famine victim at the time of her death. The jury found, however, that the immediate cause of Christina's death was Takak's act of intentionally dropping Christina on the floor head-first, causing trauma to her skull and brain. This physical assault (which preceded Christina's death by one to three days) caused Christina's brain to hemorrhage and swell inside her skull, leading to her death.[1]

The State prosecuted Johnson for second-degree murder premised on a parent's duty to protect his child from physical harm.[2] The state medical examiner testified at Johnson's trial that both head trauma and starvation caused Christina's death. He also testified that the head trauma would have killed Christina even if she had not been starved, but either had the capacity to kill her. John-son's forensic pathologist testified that although Christina was profoundly starved and would likely have died, the sole cause of Christina's death was the head trauma and starvation neither caused nor contributed to her death. Johnson argued to the jury that even if it found he had been aware that Takak was starving Christina, he had no reason to be aware of a particular danger that Takak might assault Christina.

The jury acquitted Johnson of second-degree murder but convicted him of manslaughter. The jury also returned a special verdict form showing unanimous agreement that the cause of Christina's death was head trauma, not starvation or a combination of the two.

Johnson filed a motion for judgment of acquittal, arguing that even if the State proved he recklessly disregarded the risk that Takak was starving Christina, the jury's special verdict established that starvation did not contribute to Christina's death. The trial court treated the motion as a request for a new trial, vacated the verdict, and ordered a new trial:

> The court has no doubt that evidence supports a jury verdict that the defendant knew that allowing Christina to remain with Heather Takak would result in her death by starvation or that he was aware of and consciously disregarded a substantial and unjustifiable risk that allowing the baby to remain with Heather Takak would result in starvation. The court further believes that the evidence supports a jury verdict of manslaughter, if starvation was a substantial factor in bringing about the death of Christina Johnson. The testimony of [the state medical examiner] was clear on that issue. Because the evidence supports a verdict of manslaughter, given the evidence from the trial, the court must deny the motion for judgment of acquittal.

1. *Johnson v. State*, 175 P.3d 674, 675 (Alaska App.2008). We also note that although underweight at birth (she was born prematurely), Christina stopped gaining weight in July 2003 when she weighed roughly 10 pounds. Christina weighed 7.7 pounds when she died in November 2003, just weeks before her first birthday.

2. *See Willis v. State*, 57 P.3d 688, 693–97 (Alaska App.2002) (affirming conviction for criminal re-sponsibility based on parent's failure to act to protect child from assault by other parent); *Michael v. State*, 767 P.2d 193, 197–98 (Alaska App.1988) (holding that parent can be held responsible for assault on child if parent, knowing that child is in danger of assault from other parent, unreasonably fails to take action to protect child), *rev'd on other grounds*, 805 P.2d 371 (Alaska 1991).

The problem this case presents is that the jury found the defendant guilty of manslaughter and then further unanimously found the cause of death to be head trauma. *There was insufficient evidence to suggest that Frank Johnson knew or was aware of a substantial and unjustifiable risk that Heather Takak would cause head trauma to the child and did nothing.*

. . .

. . . The jury unanimously agreed as to the cause of death. The question is whether the evidence supports a verdict of manslaughter in the face of that unanimous special verdict.

. . . The court believes that, under the circumstances of this case, it should treat [the acquittal] motion as a motion for a new trial. The court believes that between the two expert witnesses, [the state medical examiner] was more persuasive. Had this case been tried to the court, the court would have returned the same verdict as the jury, but any special verdict would have been different. The court believes that reason and common sense support a conclusion that any person who is severely malnourished faces a much reduced likelihood of survival when subjected to traumatic injury. In that context, inanition would be a substantial factor in causing any subsequent death. Nevertheless, the jury concluded otherwise. *However, because substantial evidence supports a verdict of manslaughter, but not manslaughter in the manner found by the jury, the court will deny the motion for acquittal but grant a new trial.* (Emphasis added.)

Johnson petitioned the court of appeals, arguing that the trial court should have granted his motion for judgment of acquittal and asking the court of appeals for that relief. The court of appeals instead reversed the trial court's order granting a new trial and affirmed the manslaughter conviction,[3] stating that Johnson's conviction "stands or falls" on whether a reasonable jury could conclude Takak's physical assault on Christina was foreseeable:[4]

When (as in Johnson's case) the government alleges that a defendant is criminally responsible for harm to another person because of the defendant's failure to perform a care-taking duty, a question often arises as to whether the conduct or event that caused the harm was foreseeable to a person in the defendant's position. As our supreme court explained in *Joseph v. State,* 26 P.3d 459 (Alaska 2001), the resolution of this question of foreseeability is relevant to two issues: the issue of whether the defendant failed to fulfill the care-taking duty imposed by law, and the issue of whether a "superseding cause" intervened to cause the harm.

. . . .

. . . [T]he defendant's care-taking duty is breached only if the defendant was aware of the risk of harm and refrained from taking preventative action. If the defendant could not reasonably foresee the conduct that caused the harm, then there would be no breach of duty when the defendant failed to take action to prevent it. And, by the same token, if the conduct that caused the harm was not foreseeable, then that conduct would normally constitute a "superseding" cause of the harm.

But if, on the other hand, the danger *was* foreseeable to the defendant, this would establish a breach of duty and, at the same time, it would preclude a finding of "superseding" cause.[5]

Because this case involves a legal duty of protection, the court of appeals examined and discussed our explanation of foreseeability in *P.G. v. State, Department of Health & Human Services, Division of Family & Youth Services,*[6] a civil case involving the state's duty to inform potential foster parents of a foster child's known dangerous propensities.[7] Acknowledging *P.G.*'s broad definition of

---

**3.** *Johnson,* 175 P.3d at 681.

**4.** *Id.* at 678.

**5.** *Id.* (emphasis in original).

**6.** 4 P.3d 326 (Alaska 2000).

**7.** *Id.* at 332–35 (concluding "foreseeability does not require an ability to predict precise actions and exact injuries" and holding in part it was error to find no genuine factual dispute on issue of foreseeability).

foreseeability for tort liability, the court of appeals nevertheless concluded that:

> [T]he same basic principle applies to criminal prosecutions based on a breach of the duty of care: the harm to the victim will be deemed "foreseeable" if the victim suffers the general type of harm that the defendant could foresee, even though the defendant might not have been able to foresee the precise nature or details of the harm, or the precise manner in which the harm was inflicted.[8]

The court of appeals determined that "the general type of harm that Johnson could foresee was Christina's death through her mother's abuse" and that a jury could reasonably conclude it was foreseeable that Takak would tire of waiting for Christina to starve to death and "would turn to other, more immediate forms of child abuse."[9] The court of appeals concluded that under this analysis, the evidence submitted at trial was sufficient to support Johnson's manslaughter conviction.[10]

Johnson petitioned our court to answer "the question of whether the court of appeals erred in imposing the civil negligence definition of foreseeability to a criminal prosecution based on reckless conduct."[11]

8. *Johnson*, 175 P.3d at 680.

9. *Id.*

10. *Id.*

11. The State argues that Johnson proposed jury instruction language embodying the same standard employed by the court of appeals and, consequently, that any error was invited. The invited error doctrine limits the scope of review on appeal when a party urges a lower court to do something that it later appeals as erroneous. *Barrett v. State*, 772 P.2d 559, 568 n. 10 (Alaska App.1989).

Johnson correctly points out that his proposed jury instruction related to proximate cause, but did not contain a definition of foreseeability. The most relevant statement in that instruction is: "the law does not hold a defendant responsible if the death, while perhaps linked to the defendant's conduct, is primarily caused by extraordinary or unforeseeable conduct on the part of a third person, so that it no longer [is] reasonable to say that the injury was 'caused' by the defendant's conduct."

## III. STANDARD OF REVIEW

■ We review de novo questions of law,[12] such as the appropriate definition of foreseeability.[13] We "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[14]

## IV. DISCUSSION

■ Johnson was convicted of manslaughter, statutorily defined as "intentionally, knowingly, or recklessly caus[ing] the death of another person under circumstances not amounting to murder in the first or second degree."[15] "Recklessly" is defined as:

> when the person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists; the risk must be of such a nature and degree that disregard of it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.[16]

If death was not a foreseeable result of an act or failure to act, the defendant cannot be guilty of manslaughter because (1) the victim's death would not have been a "substantial and unjustifiable risk"[17] and (2) the defendant's act or failure to act would not have

Because this petition deals solely with the appropriate standard of foreseeability to sustain a conviction based on reckless conduct, the invited error doctrine does not limit our review.

12. *See Turney v. State*, 936 P.2d 533, 538, 544–45 (Alaska 1997) (interpreting criminal trespass statute de novo).

13. *See Beck v. State, Dep't of Transp. & Pub. Facilities*, 837 P.2d 105, 109 (Alaska 1992) (stating that extent of duty owed—based on whether defendant should foresee an injury—is a question of law).

14. *Cameron v. State*, 171 P.3d 1154, 1156 (Alaska 2007) (quoting *James v. State*, 84 P.3d 404, 406 (Alaska 2004)).

15. AS 11.41.120(a)(1).

16. AS 11.81.900(a)(3).

17. *Id.*

been a proximate cause of the victim's death.[18]

Johnson had a legal duty to protect Christina from harm because he was her father.[19] Substantial evidence was presented at trial that Johnson provided some care for Christina in the weeks leading up to her death and that Christina's starvation was so severe anyone providing care for her should have known she was being starved to death. Johnson argues that even if it had been foreseeable to him that Christina would die of starvation without his intervention, it was not foreseeable that without his intervention Christina would die from injuries caused by Takak deliberately dropping her on her head. Thus, Johnson argues, his failure to intervene to stop the starvation cannot be a proximate cause of Christina's death by head trauma.

We have not addressed the scope of foreseeability required for the imposition of criminal liability for reckless conduct.[20] Johnson contends the imposition of criminal liability for reckless conduct mandates a much narrower definition of foreseeability for the required proximate cause formulation than that found in the civil context.[21] Johnson urges us to limit criminal liability to circumstances where the defendant can foresee the specific manner in which the victim is injured or killed. Johnson relies first on the following passage from Professor LaFave's treatise:

> the defendant's conduct ... must in fact cause the death of a person who is foreseeably endangered by the conduct and *whose death occurs in a foreseeable way*. If it seems quite extraordinary that this victim was killed in the way he was killed, the defendant is not liable for manslaughter.[22]

Citing *State v. Malone*,[23] Johnson then contends that existing Alaska law is in accord with Professor LaFave's view. The relevant passages from *State v. Malone* are as follows:

> Although a defendant's criminal responsibility is broad, it is not limitless. The law does not hold a defendant responsible if the injury or death, while perhaps linked to the defendant's conduct, is primarily caused by abnormal, unforeseeable conduct on the part of the victim or of a third person, so that it no longer seems fair to say that the injury was "caused" by the defendant's conduct.... [T]he law calls the other person's conduct a "superseding" or "intervening" cause of the injury— meaning that the defendant is excused from liability.
>
> . . . .

---

**18.** *See* 1 Paul H. Robinson, Myron Moskovitz, & Jane Grall, Criminal Law Defenses § 88(e) (1984) (emphasizing that when determining whether an actor is the proximate cause of a death the inquiry is whether the harm was "too remote" a possibility).

**19.** *See Willis*, 57 P.3d at 693–97; *Michael*, 767 P.2d at 197–98.

**20.** In *Wren v. State* we considered a defendant's challenge to a jury instruction on proximate cause in a negligent homicide case allowing multiple proximate causes. 577 P.2d 235, 240 (Alaska 1978). The defendant based her arguments on a line of cases from other states applying different standards for proximate cause in civil and criminal cases, such that, in criminal cases, the defendant could be convicted only if his or her actions were the sole proximate cause of the harm. *Id.* We rejected that argument. *Id.* Although *Wren* allowed the imposition of that particular civil standard of proximate cause in criminal cases, it did not address the specific issue of foreseeability.

**21.** Professor Wayne LaFave, in his treatise, *Substantive Criminal Law*, concludes that the civil standard for proximate cause has at least some bearing on the issue of proximate cause in criminal law:

> The problems of legal causation arise in both tort and criminal settings, and the one situation is closely analogous to the other. Although the courts have generally treated legal causation in criminal law as in tort law, on principle they do not have to, for the issue is not precisely the same in the two situations....
>
> But with crimes, where the consequences of a determination of guilt are more drastic (death or imprisonment, generally accompanied by moral condemnation, as contrasted with a mere money payment) it is arguable that a closer relationship between the result achieved and that intended or hazarded should be required.

1 Wayne R. LaFave, Substantive Criminal Law § 6.4(c), at 471–72 (2d ed.2003) (footnotes omitted).

**22.** 2 *id.* § 15.4(c), at 527 (emphasis added by Johnson).

**23.** 819 P.2d 34 (Alaska App.1991).

Nevertheless, once a defendant has set events in motion, no conduct of the victim or of a third person will be a "superseding" or "intervening" cause (that is, one that relieves the defendant of criminal responsibility for an ensuing injury or a death) if (1) the defendant's conduct created or enhanced the risk that someone would suffer the type of injury actually suffered by the victim, and (2) the contributing conduct of the victim or of the third person was either a normal reaction to the defendant's conduct or was a reasonably foreseeable consequence of the defendant's conduct.[24]

We do not agree with Johnson's narrow reading of these passages. It is true that Professor LaFave advocates for a stricter standard of foreseeability for criminal liability than that imposed by tort law.[25] But Professor LaFave's view and *State v. Malone* do not inevitably lead to the narrow standard of foreseeability Johnson proposes.

We also take into account the Model Penal Code text and commentary, which "was 'adopted in large measure' by the Alaska legislature in 1978."[26] We, and the court of appeals, have previously recognized the usefulness of the Model Penal Code and its commentary in interpreting Alaska criminal statutes.[27] Consulting that source here seems particularly appropriate given the similarity between Alaska's statutory definition of recklessness and that of the Model Penal Code.[28] The Model Penal Code formulation of foreseeability, which is similar or identical to statutes in other jurisdictions,[29] is especially informative:

> (3) When recklessly or negligently causing a particular result is an element of an offense, the element is not established if the actual result is not within the risk of which the actor is aware or, in the case of negligence, of which he should be aware unless:
>
> . . . .
>
> (b) the actual result involves the same kind of injury or harm as the probable result and is not too remote or accidental in its occurrence to have a [just] bearing on the actor's liability or on the gravity of his offense.[30]

The Model Penal Code couches the relationship between liability and unforeseen consequences in terms of culpability, not causation.[31] The question is not whether the actual result occurs in a manner the actor knows or should know is substantially more probable given his conduct—the drafters ini-

---

24. *Id.* at 37 (citing (for the second passage) Rollin M. Perkins & Ronald N. Boyce, Criminal Law § 9, at 814–15 (3d ed.1982))

25. *See* 1 LaFave, note 21, above, § 6.4(c) at 471–72.

26. *Jeffries v. State*, 169 P.3d 913, 916 (Alaska 2007) (quoting *Pears v. State*, 698 P.2d 1198, 1202 (Alaska 1985)).

27. *See, e.g., Pears*, 698 P.2d at 1203 n. 10 (quoting *Neitzel v. State*, 655 P.2d 325, 327 (Alaska App.1982)) ("Nevertheless, the Model Penal Code is the foundation upon which our code rests and a researcher interested in discovering the meaning of a given Alaskan criminal statute must begin with the Model Penal Code and its comments. . . .").

28. *Compare* AS 11.81.900(a)(3):

> [A] person acts "recklessly" with respect to a result or to a circumstance described by a provision of law defining an offense when the person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists; the risk must be of such a nature and

degree that disregard of it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. . . .

*with* Model Penal Code § 2.02(c), at 226 (Official Draft & Revised Comments 1985):

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.

29. *See, e.g.,* Ala.Code § 13A–2–5 (1975); Del.Code Ann. tit. 11, § 263 (1995); Haw.Rev.Stat. § 702–216 (1984); Mont.Code Ann. § 45–2–201 (1973); N.J. Stat. Ann. § 2C:2–3; 18 Pa. Cons.Stat. Ann. § 303 (West 2003).

30. Model Penal Code, note 28, above, § 2.03, at 253–54.

31. *See id.* cmt. 2, at 258.

tially proposed such an alternative ending for subsection (3)(b), but ultimately recognized the need to be "flexible for application to the infinite variety of cases that may arise."[32] The comment to subsection (3) explains instead that "if the actual result involved the same kind of injury or harm as the probable result, the question asked is whether the actual result is too remote or accidental in its occurrence to have a [just] bearing on the actor's liability...."[33]

The Model Penal Code provision and its related commentary make clear that the exact manner in which a crime occurs need not correspond precisely to the potential risk posed by the defendant's behavior.[34] We agree that the high price of criminal liability should not be paid where the relationship between a defendant's conduct and its consequences is only remote or accidental. Yet we also agree with the Model Penal Code drafters that one cannot escape criminal liability simply because his conduct did not produce the intended or even most likely chain of events. As the drafters rightly concluded, the need for flexibility is great. We cannot fashion a rule detailing precisely which consequences are too remote to preclude criminal liability—that will be left to the fact finder.

 With these principles in mind we turn to the specific definition of foreseeability to be used in determining criminal liability for reckless conduct. A defendant is responsible for the natural consequences of his or her act or failure to act. Natural consequences are those reasonably foreseeable in light of ordinary experience.[35] The defen-

dant need not have foreseen the specific manner of resulting harm so long as (1) the general type of harm was foreseeable, and (2) the actual harm falls within the scope of risk hazarded by the defendant's conduct and is not too remote or accidental in occurrence.[36]

We agree with Johnson that using *P.G.*'s definition of foreseeability was error, even though the only difference between *P.G.*'s definition and that announced today is the express consideration of remoteness. But we decline to apply the definition of foreseeability articulated in our opinion to the facts of this case or to consider Johnson's argument that retrial would violate double jeopardy principles.

## V. CONCLUSION

We VACATE the court of appeals's decision and REMAND for further proceedings consistent with this opinion.

---

**32.** *Id.* cmt. 3, at 261 n. 17 (noting also that the prevailing view "puts a much less artificial question to the jury").

**33.** *Id.* at 263–64. The comment further explains that, with respect to subsection (3), the "actual" result is to be contrasted with the probable result "in terms of its specific character and manner of occurrence." *Id.* at 260 n. 13.

**34.** *Id.* at 261–64.

**35.** *State v. Lovelace,* 137 Ohio App.3d 206, 738 N.E.2d 418, 427 (1999). In that case the Ohio Court of Appeals stated:

It should be emphasized that for something to be foreseeable does not mean that it be actually envisioned.... "It is not necessary

that the accused [be] in a position to foresee the precise consequence of his conduct; only that the consequence be foreseeable in the sense that what actually transpired was natural and logical in that it was within the scope of the risk created by his conduct."

*Id.* at 428 (quoting *State v. Losey,* [23 Ohio App.3d 93,] 491 N.E.2d 379, 383 (Ohio App. 1985)). In *Lovelace* the Ohio court held the jury could reasonably have concluded the defendant should have foreseen that by leading the police on a high-speed chase, one of his pursuers could lose control of his car and kill a bystander. *Id.*

